**TURNBULL, HOLCOMB & LEMOINE, P.C.**
M. Alan Holcomb
California Bar No. 311171
aholcomb@turnbullfirm.com
945 East Paces Ferry Road, NE
Suite 2275
Atlanta, GA 30326
Telephone: (404) 793-2566
Facsimile: (404) 348-4260
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WESLEY GIBSON; and
ALEXIS GIBSON,
individually and as surviving parents and as successor-in-interest to Decedent Wyatt G. Gibson;

Plaintiffs,

vs.

WAL-MART, INC.;
FLORA CLASSIQUE, INC.;
MEREDITH CORPORATION;
RAMESH FLOWERS PRIVATE LIMITED; DOES 1 through 20;
ROE Corporations 1 through 20;
and DOE Employees 1 through 20, inclusive,

Defendants.

Case No.: 5:22-cv-00238

**THIRD AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES:**

1. **STRICT PRODUCTS LIABILITY – DESIGN DEFECT**
2. **STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
3. **STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
4. **NEGLIGENCE – PRODUCTS LIABILITY**
5. **BREACH OF IMPLIED WARRANTY**

**JURY TRIAL DEMANDED**

Plaintiffs, **WESLEY GIBSON** and **ALEXIS GIBSON**, individually and as surviving parents and as successors-in-interest to Decedent, Wyatt G. Gibson, by and through their undersigned counsel, **TURNBULL, HOLCOMB & LEMOINE, P.C.**, hereby file this Third Amended Complaint for Wrongful Death and Survival Damages against Defendants alleging as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. At all relevant times, Plaintiff **WESLEY GIBSON** was and is a resident of the State of Georgia. Wesley Gibson is the surviving father and successor-in-interest of Wyatt G. Gibson, deceased.

2. At all relevant times, Plaintiff **ALEXIS GIBSON** was and is a resident of the State of Georgia. Alexis Gibson is the surviving mother and successor-in-interest of Wyatt G. Gibson, deceased. Alexis Gibson is the duly appointed administrator of the Estate of Wyatt G. Gibson.

3. Plaintiffs **WESLEY GIBSON** and **ALEXIS GIBSON** bring this action as successors-in-interest to the claims for damages resulting from the personal injuries suffered by Wyatt G. Gibson, deceased, as a survival action, pursuant to Code of Civil Procedure sections 377.30 *et seq.* In addition, because of their relationship to Wyatt G. Gibson, deceased, Plaintiffs join in this action their

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

wrongful death claims and action, pursuant to California Code of Civil Procedure sections 377.60, *et seq.*[1]

4. At all relevant times, Defendant **WALMART INC.** ("Walmart") was and is a corporation organized and existing under the laws of the State of Delaware, with its principal office in the State of Arkansas. Defendant Walmart is registered to do business in the State of California. Walmart can be served with process via its agent for service of process, C T Corporation System, 330 North Brand Blvd, Suite 700, Glendale, California 91203.

5. At all relevant times, Defendant **FLORA CLASSIQUE, INC.** ("Flora") was and is a corporation organized and existing under the laws of the State of California, with its principal office in the State of California and doing business as a manufacturer, importer, and distributor of home fragrances in Riverside County, California. Flora can be served with process via its agent for service of process, Monica Bumgarner, 36595 Kevin Road, Suite 139, Wildomar, California 92595.

6. At all relevant times, Defendant **MEREDITH CORPORATION** ("Meredith") was and is a corporation organized and existing under the laws of the State of Iowa, with its principal office in the State of Iowa and doing business as a manufacturer, retailer, seller, and distributor of home fragrances in the State of

[1] The Declaration of Successors-in-Interest is attached as Exhibit 1.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

California. Meredith is registered to do business in the State of California. Meredith can be served with process via its agent for service of process, C T Corporation System, 330 North Brand Blvd, Suite 700, Glendale, California 91203.

7. At all relevant times, Defendant **RAMESH FLOWERS PRIVATE LIMITED** ("Ramesh Flowers") was an Indian manufacturing company and supplier of product for Walmart. Ramesh Flowers' business address is A-62, Sipcot Industrial Complex, Tuticorin - 628002, Tamil Nadu, India. Ramesh Flowers has its principal place of business in India. India is a signatory to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638. Where the Convention applies, it will provide the mandatory means for service of process. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). The Court should issue process under Federal Rule of Civil Procedure 4(f)(1), (h)(2).

(a) The address for India's Central Authority designated to receive service requests:

Central Authority
The Ministry of Law and Justice
Department of Legal Affairs
4th Floor, A-Wing, Shastri Bhavan
New Delhi
110 001 India

8. The Convention only applies "in all cases, in civil or commercial matters, ***where there is occasion to transmit*** a judicial or extrajudicial document

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

***for service abroad***." Article 1 (emphasis added). As such, if service can be effected within the United States, Hague strictures are not implicated. However, if service must be effected in India, the treaty controls absolutely, and Indian procedures ordinarily take well over a year—and often two years—to return proof to an applicant.[2]

9. Ramesh Flowers is the parent company of Defendant Flora Classique, the California-based corporation that participated in the design, manufacture, and importation of the Subject BHG Aromatherapy Product.

10. Ramesh Flowers actively participated in the design, manufacture, and supply of the Subject BHG Aromatherapy Product in conjunction with its California-based location, Flora Classique, and the direction of Walmart.

11. On its website, Ramesh Flowers describes its relationship with California-based Flora Classique as follows: "Flora Classique Inc., has been a subsidiary of Ramesh Flowers in California for over a decade, which extends its support in activities like marketing, distribution and strategic development in the American sub-continent."[3]

---

[2] See Aaron Lukken, "Brace yourself. Service of process in India is gonna take a while." at https://www.haguelawblog.com/2016/11/brace-service-process-india-gonna-take/

[3] https://www.rameshflowers.com/in-depth

12. Under its relationship with California-based Flora Classique, Ramesh Flowers exercised control over Flora Classique and had the right to substantially control Flora Classique's actions with respect to the design, manufacture, and importation of the Subject Aromatherapy Product.

13. Under its contractual relationship with Defendant Walmart, Ramesh Flowers produced and supplied the Subject BHG Aromatherapy Product according to Walmart's specifications and exported it to the United States for use by Walmart's consumers.

14. Upon information and belief, the Subject BHG Aromatherapy Product was supplied by Ramesh Flowers and produced at its India-based diffuser production factory.

15. Ramesh Flowers exported the Subject BHG Aromatherapy Product that ultimately injured Plaintiffs' son, Wyatt Gibson, to its only United States based importer of record, Defendant Flora Classique.

16. Ramesh Flowers actively markets and distributes products such as aromatherapy room sprays, scented candles, diffusers, and potpourri in the State of California and has done so for over a decade.

17. Ramesh Flowers actively marketed its products, including the BHG Aromatherapy Product, in the State of California through its California-based location, Flora Classique.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

18. Ramesh Flowers transacts business in this State, either on its own and/or by and through its subsidiaries and derives substantial revenue from business in this State.

19. Ramesh Flowers derives substantial revenue from goods sold and used in this State, and regularly does or solicits business in California. It also maintains a facility in Riverside County, California, through which it derives substantial revenue from goods sold and used by consumers throughout the State of California. Under California's long-arm statute (Cal. C.C.P. § 410.10), this Court has personal jurisdiction over Ramesh Flowers.

20. Defendant Ramesh Flowers derives revenue from sales of its products, including BHG Aromatherapy Products, within the State of California and has purposely availed itself of the privilege of doing business in California.

21. Ramesh Flowers entered into agreements to participate in the design, manufacture, supply, and importation of the Subject BHG Aromatherapy Product with its California subsidiary, Defendant Flora Classique.

22. Ramesh Flowers designed, manufactured, supplied, and exported the Subject BHG Aromatherapy Product from India in the purposeful direction of the State of California.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

23. Ramesh Flowers shipped the BHG Aromatherapy Products and component parts via its facility in California with the reasonable expectation that they could or would find their way to California through the stream of commerce.

24. Ramesh Flower's actions in designing and manufacturing products in conjunction with its California subsidiary, and its actions in shipping the product directly to California should have led it to reasonably anticipate being hauled into court here.

25. On its website, Ramesh Flowers represents to the public that one of Ramesh Flowers' locations is California-based Defendant Flora Classique, located in Wildomar, California:[4]




**CALIFORNIA:**
**FLORA CLASSIQUE INC.**
36595 KEVIN ROAD, SUITE 137-139,
WILDOMAR,
CA-92595, USA
**Phone:** 951-676-1888
**Fax:** 951-676-1822

[4] https://www.rameshflowers.com/our-locations

26. For the purpose of its business in the United States, Ramesh Flowers' principal place of business is through its subsidiary and only United States based importer of record, Flora Classique in Wildomar, California.

27. The claims of this Complaint arise out of and relate to Ramesh Flowers' actions and contacts with the forum related to the Subject BHG Aromatherapy Product as described above. Exercising personal jurisdiction over Ramesh Flowers in this Court comports with due process. This Court has specific personal jurisdiction over Ramesh Flowers.

28. Defendant Ramesh Flowers also has sufficient "minimum contacts" with California so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice and is reasonable under the circumstances. Exercising personal jurisdiction over Ramesh Flowers in this Court comports with due process.

29. Due to its continuous and systemic contacts with the State of California, including having a subsidiary in the State that markets for Ramesh Flowers in this State and the United States, and shipped products directly to its California location, this Court has general jurisdiction over Ramesh Flowers.

30. Because Ramesh Flowers' contacts with the State of California, and specifically, through its work with Flora Classique on the Subject BHG Aromatherapy Product, give rise to the claims of this Complaint, this Court has

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

specific jurisdiction over Ramesh Flowers under California's long-arm statute (Cal. C.C.P. § 410.10).

31. Plaintiffs are ignorant of the true names or capacities of Defendants sued herein under the fictitious name of DOES 1 to 20.

32. The true names and/or capacities, whether individual, corporate, associate, governmental or otherwise of Defendants DOES 1 to 20, inclusive and each of them are unknown to Plaintiffs, who therefore sue those Defendants by such fictitious names. When the true names and/or capacities of the DOE Defendants are ascertained, Plaintiffs will amend this Complaint accordingly.

33. Plaintiffs are informed and believe, and based thereon allege, that each Defendant designated herein as a DOE was responsible, negligently or in some other actionable manner, for the events and happenings herein referred to which proximately caused the damages to Plaintiffs as hereinafter alleged, either through said Defendants' own negligence or through the conduct of their agents, servants, employees, or representatives in some other manner.

34. Plaintiffs are informed and believe and based thereon allege that at all relevant times Defendants and each of them were the agents, servants, employees, representatives and/or joint-venturers of their co-Defendants and were, as such acting within the course, scope, and authority of said agency, services, employment, representation, and/or joint venture in that each and every Defendant, as aforesaid

when acting as principal, was negligent in the selection and hiring of each and every other Defendant as an agent, servant, employee, representative, and/or joint-venturer.

35. Plaintiffs are informed and believe, and based thereon allege that at all times mentioned herein each of Defendants, including Defendant DOES 1 to 20, inclusive, and each of them were the agents, servants, employees, and representatives of each of the remaining Defendants and were at all times material hereto acting within the authorized course and scope of said agency, service, employment and/or representation, and/or that all of said acts, conduct, and omissions were subsequently ratified by their respective principals and the benefits thereof accepted by such principals.

36. Each Defendant was properly served with the Summons and Original Complaint and is being served with this Third Amended Complaint through the Court's electronic filing (CM/ECF) system.

## II. GENERAL ALLEGATIONS

37. In early 2021, Plaintiffs purchased the Better Homes and Gardens Essential Oil Infused Aromatherapy Room Spray with Gemstones, Lavender & Chamomile ("Subject BHG Aromatherapy Product"), from a Walmart located in and around Calhoun, Georgia.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

38. The Subject BHG Aromatherapy Product was meant to impart a pleasant smell to the consumer and to be inhaled or otherwise absorbed by the human body.

39. Aromatherapy sprays are marketed to the public as to be effective in relieving stress, promoting restful sleep, and promoting overall health and well-being.

40. The Subject BHG Aromatherapy Product was manufactured in India.

41. In March 2021, an adult in Kansas was identified as infected with *Burkholderia pseudomallei*, a deadly bacterium rarely found in North America. The adult later died from the infection.

42. In May 2021, the United States Centers for Disease Control and Prevention ("CDC") identified two non-travel-related *Burkholderia pseudomallei* infections, an adult located in Minnesota and a four-year-old located in Texas.

43. On or about October 21, 2021, recalls of BHG-branded Aromatherapy Room Spray with Gemstones in six scents were initiated: Lavender & Chamomile (84140411420); Lemon & Mandarin (84140411421); Lavender (84140411422); Peppermint (84140411423); Lime & Eucalyptus (84140411424); and Sandalwood & Vanilla (84140411425).

44. These spray bottles were sold at Walmart stores in Calhoun, Georgia, and in Alabama, Colorado, Florida, Iowa, Illinois, Indiana, Kansas, Minnesota,

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

Missouri, New Mexico, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Utah, and Wisconsin.

45. The CDC's investigation confirmed the presence of *Burkholderia pseudomallei* in the Subject BHG Aromatherapy Product used by Plaintiffs.

46. CDC testing confirmed Wyatt G. Gibson's infection was related to the previous non-travel related infections found in Kansas, Texas, and Minnesota:

**From:** Weiner, Zachary (CDC/DDID/NCEZID/DHCPP) <xxd7@cdc.gov>
**Sent:** Friday, July 30, 2021 11:57 AM
**To:** Lee, Joo (CDC/DDID/NCEZID/DSR) <ihk3@cdc.gov>; Lonsway, David (CDC/DDID/NCEZID/DHQP) <dul7@cdc.gov>; Glass Elrod, Mindy (CDC/DDID/NCEZID/DHCPP) <wzg0@cdc.gov>
**Cc:** Reese, Natashia (CDC/DDID/NCEZID/DHQP) <nfu2@cdc.gov>; Bagarozzi, Dennis Jr., Ph.D. (CDC/DDID/NCEZID/DSR) <zbg7@cdc.gov>; Harris, Desiree (CDC/DDID/NCEZID/DSR) <mzz9@cdc.gov>
**Subject:** RE: (b)(6) B. pseudomallei confirmation?

Hello,

Sorry, yes the FL isolate was confirmed as B. pseudomallei, however was unrelated to the outbreak.

We also have gotten, confirmed, and sequenced the most recent isolate from GA. It appears we have another related case.

Thanks,

Z

47. The Bacterial Special Pathogens Branch of the CDC confirmed that the Subject BHG Aromatherapy Product was made in India and distributed by Walmart:

**From:** Petras, Julia (CDC/DDID/NCEZID/DHCPP) <rhu2@cdc.gov>
**Sent:** Tuesday, October 19, 2021 6:30 PM
**To:** Wilson, William Wyatt (CDC/DDID/NCEZID/DHQP) <WUW7@cdc.gov>
**Cc:** Beshearse, Elizabeth (CDC/DDID/NCEZID/DHQP) <pgz1@cdc.gov>
**Subject:** RE: B. pseuodmallei Check In

Hi Wyatt – we have some breaking news: we just got our first PCR + result from a room spray product from the GA household . We will have confirmatory results by Thursday/Friday by culture and WGS. We will share more info when we get it but these prelim findings suggest not healthcare acquired. We reached out to GA today and have a call with other states tomorrow for next steps.

Product info:

Better Homes & Gardens aromatherapy "Lavender & Chamomile" Room Spray/Lavender & Chamomile" BHS028047806021
Distributed by Walmart Inc., Bentonville, AR 72716
Made in India
Lot: 84140411420

Thanks,

Julia

48. The CDC confirmed the Lot Number of the Subject BHG Aromatherapy Product as Lot No. 84140411420.

### A. ***Burkholderia pseudomallei* and Melioidosis**

49. *Burkholderia pseudomallei* is a rare and deadly bacterium found predominately in Southeast Asia. The bacterium is extremely rare in North America.[5]

50. *Burkholderia pseudomallei* only occurs naturally in the United States in Puerto Rico and the U.S. Virgin Islands.

51. The United States Government considers *Burkholderia pseudomallei* to be a Tier 1 biological select agent and toxin (Tier 1 BSAT). Other Tier 1 BSAT include the Ebola virus and the Marberg virus.

52. Infection with *Burkholderia pseudomallei* is a serious health risk for death. Eradication of the bacterium following infection is difficult. The bacterium is intrinsically resistant to many antibiotics.[6]

---

[5] *See Melioidosis: insights into the pathogenicity of Burkholderia pseudomallei*, Nature, Vol. 4 (2006).

[6] *Id.*

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

53. The mortality rate for children infected with *Burkholderia pseudomallei* has been reported to be as high as 35 percent in parts of Asia.[7]

54. Infection with *Burkholderia pseudomallei* is the causative agent of melioidosis.[8]

55. Melioidosis is only found in individuals exposed to environments containing *Burkholderia pseudomallei*. Infection is acquired through cutaneous inoculation, inhalation, and aspiration. It is very rare for people to get the disease from another person.[9]

56. Only approximately a dozen melioidosis cases are identified each year in the United States and have primarily occurred among travelers and immigrants coming from places where the disease is widespread, such as Southeast Asia.

57. Melioidosis can present with an array of clinical signs and symptoms, including, but not limited to, localized pain or swelling; high fever; ulceration; cough; chest pain; headache; respiratory distress; abdominal discomfort; joint pain; disorientation; weight loss; central nervous system/brain infection; seizures, and death. More than 50 percent of cases present with pneumonia.

---

[7] *See id.*

[8] *See id.*

[9] *See id.*

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

58. Due to its nonspecific symptoms, melioidosis can initially be mistaken for other diseases, which can delay proper treatment.

**B. Wyatt G. Gibson's Infection and Death**

59. Plaintiffs' five-year-old son, Wyatt G. Gibson, deceased, was exposed to the Subject BHG Aromatherapy Product in the normal course of use in the household, as intended by the designers, manufacturers, importers, distributors, and retailers of the product.

60. In early July 2021, Wyatt G. Gibson, deceased, became ill with fatigue, nausea, vomiting, weakness, shallow breathing, and moderate dehydration.

61. Wyatt G. Gibson, deceased, died from a confirmed case of *Burkholderia pseudomallei* (melioidosis) on or about July 16, 2021.

62. The initial death certificate for Wyatt G. Gibson, deceased, incorrectly showed COVID-19 as the cause of his demise; post-mortem testing correctly identified melioidosis as the cause of Wyatt G. Gibson's death.

63. Samples taken by the CDC from the Subject BHG Aromatherapy Product confirmed the presence of *Burkholderia pseudomallei*.

64. Based on genomic analysis, the CDC concluded that the four cases of melioidosis in Georgia, Kansas, Minnesota, and Texas in 2021 closely match, indicating they all most likely share a common source of exposure, more specifically BHG-branded Aromatherapy Room Spray with Gemstones.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

65. Genomic analysis of the four patient isolates grouped closely with strains from Southeast Asia.

**C. <u>New England Journal of Medicine Article</u>**

66. In March 2022, the New England Journal of Medicine published a case report on the subject outbreak of melioidosis.[10]

67. The case study authors included highly-qualified doctors and researchers from the CDC, the Georgia Department of Public Health, Emory University School of Medicine, the Minnesota Department of Health, the Texas Department of State Health Services, and the University of Melbourne, VIC.

68. The study concluded that isolates from each of the four individuals with melioidosis matched an isolate from the Subject BHG Aromatherapy Product.[11]

69. Th study concluded the Subject BHG Aromatherapy Product "was the source of the exposure."[12]

70. The study noted that Decedent Wyatt G. Gibson's autopsy revealed *Burkholderia pseudomallei* in Wyatt's lungs, liver, spleen, and brain.[13]

---

[10] Gee, et al., *Multistate Outbreak of Melioidosis Associated with Imported Aromatherapy Spray*, N ENG J MED 386;9 (2022), attached as Exhibit 2.

[11] *Id.* at 862.

[12] *Id.* at 864.

[13] *Id.*

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

**D. The Role of Flora Classique**

71. Flora is a manufacturer, importer, and distributor of home fragrances in the United States.

72. Flora services large retailers, such as Walmart, Ross, Hobby Lobby, Burlington, Bed Bath & Beyond, and Michaels.

73. Flora manufactured the Subject BHG Aromatherapy Product.[14]

74. Walmart publicly identified Flora as the manufacturer of the Subject BHG Aromatherapy Product.[15]

75. Flora imported the Subject BHG Aromatherapy Product into the United States.

76. Flora participated in the distribution of the Subject BHG Aromatherapy Product.

77. Flora participated in marketing the Subject BHG Aromatherapy Product to distributors and retailers in the United States.

78. As the product's manufacturer, Flora participated in, and was responsible for, the design of the Subject BHG Aromatherapy Product.

---

[14] Jacob Koshy, *India-made spray linked to rare illness in U.S.*, THE HINDU (Oct. 30, 2021), attached as Exhibit 3.

[15] Walmart Corporate Statement, attached as Exhibit 4.

79. As the product's manufacturer, Flora participated in, and was responsible for, the manufacturing process of the Subject BHG Aromatherapy Product.

80. As the product's manufacturer, Flora participated in, and was responsible for, the assembly of the Subject BHG Aromatherapy Product.

81. Flora participated in, and was responsible for, inspection, testing, and quality control in the design, manufacturing, importation, and distribution of the Subject BHG Aromatherapy Product in the United States.

82. As a designer, manufacturer, marketer, importer, and distributor of the Subject BHG Aromatherapy Product, Flora was required to develop proper design, manufacturing, inspection, testing, quality control, and distribution practices that would prevent contamination of the Subject BHG Aromatherapy Product with bacteria, including *Burkholderia pseudomallei*.

83. The design, manufacturing, inspection, testing, quality control, and distribution practices conducted by Flora were done without proper consideration for the presence of bacteria.

84. Flora was required to develop and follow proper industrial hygiene practices with respect to the manufacture and distribution of the Subject BHG Aromatherapy Product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

85. Flora failed to develop and follow proper industrial hygiene practices with respect to the manufacture, inspection, and distribution of the Subject BHG Aromatherapy Product.

86. The Subject BHG Aromatherapy Product was defective at the time it was designed, manufactured, assembled, inspected, distributed, and sold in that its design and manufacture allowed it to become contaminated with the rare and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

87. At the time the Subject BHG Aromatherapy Product left Flora's possession, the Subject BHG Aromatherapy Product was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product.

88. Flora knew the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs, and that consumers, such as Plaintiffs, would likely be exposed to the products.

89. Flora designed the Subject BHG Aromatherapy Product in a manner that allowed it to transmit bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use through aerosolization, fluid leakage, and other means.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

90. As the manufacturer of the product, Flora was required to eliminate or minimize the potential for contamination, mix-ups, or errors in the manufacture of the Subject BHG Aromatherapy Product.

91. These manufacturing requirements include keeping the manufacturing process clean and sanitary and without contaminates, ensuring manufacturing personnel are qualified and trained on good manufacturing practices, equipment usage that ensures the product is contaminate-free, equipment verification, process validation, and complaint handling.

92. These manufacturing requirements protect consumers from purchasing or using a product dangerous to human health.

Flora failed to implement and comply with these manufacturing requirements, including keeping the manufacturing process clean and sanitary and without contaminates, ensuring manufacturing personnel are qualified and trained on good manufacturing practices, equipment usage that ensures the product is contaminant-free, equipment verification, process validation, and complaint handling.

### E. The Role of Walmart and Meredith Corporation

93. Walmart and Meredith Corporation were engaged in the business of distributing goods, including the Subject BHG Aromatherapy Product, to the public.

94. Walmart and Meredith Corporation were responsible for the branding, marketing, and retailing of the Subject BHG Aromatherapy Product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

95. Walmart and Meredith Corporation distributed the Subject BHG Aromatherapy Product.

96. Walmart and Meredith Corporation sold the Subject BHG Aromatherapy to United States consumers, including Plaintiffs.

97. Walmart and Meredith Corporation had an exclusive deal to market and sell the Subject BHG Aromatherapy to United States consumers.

98. Walmart sold the Subject BHG Aromatherapy Product directly to Plaintiffs in a "brick and mortar" Walmart store.

99. Walmart was responsible for selecting and supervising the importer/supplier (Flora) of the Subject BHG Aromatherapy Product.

100. Walmart knew it was placing the Subject BHG Aromatherapy Product on the market without inspection for defects that could harm United States consumers.

101. Meredith Corporation participated in the distribution and sale of the Subject BHG Aromatherapy Product.

102. Walmart and Meredith Corporation played a substantial role in ensuring that the Subject BHG Aromatherapy Product was safe for United States consumers, including Plaintiffs.

103. Walmart and Meredith Corporation were in a position to exert pressure on the manufacturers, importers, and distributors of the Subject BHG Aromatherapy

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

Product to ensure the Subject BHG Aromatherapy Product was safe United States consumers, including Plaintiffs.

104. Due to the relationship between Walmart, Meredith Corporation, and Flora, Walmart and Meredith Corporation had a direct link in the chain of distribution of the Subject BHG Aromatherapy Product, acting as powerful intermediaries between Flora and consumers.

105. Walmart and Meredith Corporation received a financial benefit from selling Subject BHG Aromatherapy Product to United States consumers, including Plaintiffs.

106. Meredith Corporation knew it was placing the Subject BHG Aromatherapy Product on the market without inspection for defects that could harm United States consumers.

107. Meredith Corporation was responsible for selecting and supervising the importer/supplier (Flora) of the Subject BHG Aromatherapy Product.

108. Walmart substantially controls the chain of distribution of the Subject BHG Aromatherapy Product due to its bargaining power as the largest retailer in the world.

109. Meredith Corporation substantially controls the chain of distribution of the Subject BHG Aromatherapy Product due to its bargaining power.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

110. As part of Walmart's control over the chain of distribution of the product, Walmart requires its suppliers to purchase and maintain Commercial General Liability insurance, Products Liability insurance, and Umbrella/Excess Liability insurance.[16]

111. Walmart sets certain quality standards for its product suppliers.

112. Walmart advertises that it "hold[s] [its] suppliers to the same high standards [it] sets for [themselves]."[17]

113. These standards apply to suppliers of Walmart, "including goods for resale and for Walmart's own use."[18]

114. Walmart requires its suppliers to execute a signed supplier agreement.[19]

115. Walmart has a supplier compliance portal for its suppliers so that suppliers can review requirements and resources related to supply to Walmart.[20]

116. Walmart has the right to audit or inspect suppliers at any time to determine whether the suppliers are complying with the supplier standards.

---

[16] *See* Walmart Insurance Requirements, attached as Exhibit 5.

[17] *See* https://corporate.walmart.com/media-library/document/standards-for-suppliers-english/_proxyDocument?id=0000015c-e70f-d3b4-a57e-ff4f3f510000, attached as Exhibit 6.

[18] *Id.*

[19] *Id.*

[20] *Id.* at p. 7.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

117. Walmart requires its suppliers to be current on laws, regulations, standards, industry best practices, conditions of sale, and scientific knowledge relevant to the suppliers' products.[21]

118. Walmart required certain suppliers to "disclose to Walmart how and where those products are made and who is making them."[22]

119. Walmart requires its suppliers to implement procedures to monitor compliance with laws, policies, and Walmart's own supplier standards.[23]

120. Walmart's supplier standards were insufficient to ensure that the Subject BHG Aromatherapy Product was safe for consumers.

121. Walmart failed to enforce its own supplier standards with respect to the Subject BHG Aromatherapy Product, thereby causing a defective and dangerous product to be sold to United States consumers, including Plaintiffs.

122. Walmart and Meredith Corporation failed to ensure that the Subject BHG Aromatherapy Product was designed, manufactured, imported, assembled, and tested in a manner that would ensure the product was safe for human use and exposure.

---

[21] *Id.* at p. 8.

[22] *Id.*

[23] *Id.*

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

123. Walmart and Meredith Corporation failed to properly monitor product safety issues with respect to the Subject BHG Aromatherapy Product.

124. Walmart and Meredith Corporation failed to properly monitor the Subject BHG Aromatherapy Product to ensure the product and its manufacturing process met recognized safety standards.

125. Walmart and Meredith Corporation failed to properly monitor the Subject BHG Aromatherapy Product for product specification deviations, contaminates, or microbiological hazards that made the subject product unsafe for consumers.

**F. The Role of Ramesh Flowers**

126. Ramesh Flowers is the parent company of Flora Classique.[24]

127. Flora Classique has been a subsidiary of Ramesh Flowers for over 10 years.

128. Ramesh Flowers maintains and controls Flora Classique as its only United States based subsidiary and uses it as its importer of record for products, including the Subject BHG Aromatherapy Product.

129. Ramesh Flowers is a member of Gala Group, one of the largest manufacturers of candles and scents in the world.

---

[24] Docket No. 3.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

130. Ramesh Flowers Flora is a manufacturer, importer, and distributor of home fragrances, candles, essential oils, and incense in the United States, including in the State of California.

131. Ramesh Flowers engages in marketing, distribution, and strategic development for its products in the United States, including in the State of California.

132. Ramesh Flowers has a location in the United States, and more specifically in the State of California.

133. Ramesh Flowers designed the Subject BHG Aromatherapy Product in conjunction with Defendants Walmart and Flora Classique.

134. Ramesh Flowers manufactured and supplied the Subject BHG Aromatherapy Product in conjunction with Defendants Walmart and Flora Classique.

135. In conjunction with Flora Classique, Ramesh Flowers exported the Subject BHG Aromatherapy Product to the United States, and specifically into the State of California via its importer of record, Flora Classique.

136. Ramesh Flowers participated in marketing the Subject BHG Aromatherapy Product to distributors and retailers in the United States.

137. As the product's manufacturer, Ramesh Flowers participated in, and was responsible for, the design of the Subject BHG Aromatherapy Product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

138. As the product's manufacturer, Ramesh Flowers participated in, and was responsible for, the manufacturing process of the Subject BHG Aromatherapy Product.

139. As the product's manufacturer, Ramesh Flowers participated in, and was responsible for, the assembly of the Subject BHG Aromatherapy Product.

140. Ramesh Flowers participated in, and was responsible for, inspection, testing, and quality control in the design, manufacturing, importation, and distribution of the Subject BHG Aromatherapy Product in the United States.

141. As a designer, manufacturer, marketer, importer, and distributor of the Subject BHG Aromatherapy Product, Ramesh Flowers was required to develop proper design, manufacturing, inspection, testing, quality control, and distribution practices that would prevent contamination of the Subject BHG Aromatherapy Product with bacteria, including *Burkholderia pseudomallei*.

142. The design, manufacturing, inspection, testing, quality control, and distribution practices conducted by Ramesh Flowers were done without proper consideration for the presence of bacteria.

143. Ramesh Flowers was required to develop and follow proper industrial hygiene practices with respect to the manufacture and distribution of the Subject BHG Aromatherapy Product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

144. Ramesh Flowers failed to develop and follow proper industrial hygiene practices with respect to the manufacture, inspection, and distribution of the Subject BHG Aromatherapy Product.

145. The Subject BHG Aromatherapy Product was defective at the time it was designed, manufactured, assembled, inspected, distributed, and sold in that its design and manufacture allowed it to become contaminated with the rare and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

146. At the time the Subject BHG Aromatherapy Product left Ramesh Flowers's possession, the Subject BHG Aromatherapy Product was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product.

147. Ramesh Flowers knew the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs, and that consumers, such as Plaintiffs, would likely be exposed to the products.

148. Ramesh Flowers designed the Subject BHG Aromatherapy Product in a manner that allowed it to transmit bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use through aerosolization, fluid leakage, and other means.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

149. As the manufacturer of the product, Ramesh Flowers was required to eliminate or minimize the potential for contamination, mix-ups, or errors in the manufacture of the Subject BHG Aromatherapy Product.

150. These manufacturing requirements include keeping the manufacturing process clean and sanitary and without contaminates, ensuring manufacturing personnel are qualified and trained on good manufacturing practices, equipment usage that ensures the product is contaminate-free, equipment verification, process validation, and complaint handling.

151. These manufacturing requirements protect consumers from purchasing or using a product dangerous to human health.

152. Ramesh Flowers failed to implement and comply with these manufacturing requirements, including keeping the manufacturing process clean and sanitary and without contaminates, ensuring manufacturing personnel are qualified and trained on good manufacturing practices, equipment usage that ensures the product is contaminant-free, equipment verification, process validation, and complaint handling.

## III. CAUSES OF ACTION

### A. Count One: Strict Product Liability against Flora – Design Defect

153. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

154. At all times relevant, Flora was engaged in the design, development, testing, manufacture, assembly, promotion, marketing, distribution, and/or sale of the Subject BHG Aromatherapy Product.

155. The Subject BHG Aromatherapy Product was defective at the time it was designed, developed, tested, manufactured, assembled, promoted, marketed, distributed, and sold. The Subject BHG Aromatherapy Product was defective in that its design allowed it to become contaminated with the rare and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

156. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Flora.

157. At the time the Subject BHG Aromatherapy Product left Flora's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt G. Gibson, deceased. The Subject BHG Aromatherapy Product was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

consumers like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

158. Flora intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

159. Flora knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

160. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household product.

161. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the design defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

162. The Subject BHG Aromatherapy Product, as designed by Flora, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

163. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject BHG Aromatherapy Product that is not defective.

164. The foreseeable risks of harm posed by the Subject BHG Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by Flora, and the omission of an alternative design renders the Subject BHG Aromatherapy Product not reasonably safe for its intended use.

165. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt G. Gibson, deceased, to develop a deadly infection.

166. The Subject BHG Aromatherapy Product used by Plaintiffs as a household product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

167. The use of the Subject BHG Aromatherapy Product as a household product was a substantial factor and the cause in fact of Wyatt G. Gibson's injuries, specifically, his contraction of an infection, his development of melioidosis, his subsequent pain and suffering, and eventual death.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

168. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

169. Flora's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

170. Plaintiffs lost their son due to injuries he sustained as a result of Flora's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

171. As further direct and proximate result of Flora's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

172. As a direct and proximate result of Flora's conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

## B. **Count Two: Strict Liability against Flora – Manufacturing Defect**

173. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

174. At all times relevant, Flora was engaged in the manufacture and assembly of the Subject BHG Aromatherapy Product.

175. The Subject BHG Aromatherapy Product was defective in its manufacture in that the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or shipped.

176. Flora did not intend for the Subject BHG Aromatherapy Product to be contaminated with deadly bacteria at the time of manufacture and/or assembly.

177. The Subject BHG Aromatherapy Product was defective in manufacture in that it differed from Flora's intended result or from other ostensibly identical units

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

of the same line of products in that it contained a deadly bacteria not intended or found in other units of the same product.

178. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Flora.

179. At the time the Subject BHG Aromatherapy Product left Flora's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous for Plaintiffs, including Wyatt G. Gibson, deceased. The Subject BHG Aromatherapy Product was defective in that its manufacture and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

180. Flora intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

181. Flora knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

182. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the BHG Aromatherapy Product would be used as a household product.

183. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the manufacturing and assembling defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

184. The Subject BHG Aromatherapy Product, as manufactured and assembled by Flora, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

185. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of manufacturing and assembling an alternative design of the Subject BHG Aromatherapy Product that is not defective.

186. Flora manufactured and assembled the Subject BHG Aromatherapy Product with bacteria, including *Burkholderia pseudomallei*, present in and/or on the

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

product. The contamination occurred on the production line, during manufacture, or elsewhere while in Flora's possession or control.

187. Flora's failure to ensure proper sanitation, failure to ensure proper workmanship, failure to ensure adequate testing, and/or failure to ensure adequate labeling for the Subject BHG Aromatherapy Product caused the product to be manufactured and assembled in a manner that made the product defective and unreasonably dangerous.

188. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt G. Gibson, deceased, to develop a deadly bacterial infection.

189. The use of the Subject BHG Aromatherapy Product as a household product was a substantial factor and the cause in fact of Wyatt G. Gibson's injuries, specifically, his contraction of an infection, his development of melioidosis, his subsequent pain and suffering, and eventual death.

190. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design and manufacture, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

191. Flora's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

192. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

193. Plaintiffs lost their son due to injuries he sustained as a result of Flora's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that the decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

194. As further direct and proximate result of Flora's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

195. As a direct and proximate result of Flora's conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**C. Count Three: Strict Products Liability against Flora – Failure to Warn**

196. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

197. At all times relevant, Flora was engaged in the design, development, testing, manufacture, assembly, promotion, marketing, distribution, and/or sale of the BHG Aromatherapy Product.

198. The Subject BHG Aromatherapy Product was defective at the time it was designed, manufactured, assembled, distributed, and sold.

199. The Subject BHG Aromatherapy Product was defective in that its design and manufacture allowed it to become contaminated with deadly bacteria.

200. The Subject BHG Aromatherapy Product was defective and unreasonably dangerous in that the warnings, instructions, labels, and materials failed to adequately warn distributors, retailers, and consumers about the product's serious risk of causing infection from aerosolization, fluid leakage, and other means via the product.

201. Flora failed to timely and adequately warn distributors, retailers, and consumers of the Subject BHG Aromatherapy Product's serious risks, including: (i)

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

that the Subject BHG Aromatherapy Product was contaminated with bacteria, specifically *Burkholderia pseudomallei*, at the time the product was manufactured, assembled, or imported; (ii) that the Subject BHG Aromatherapy Product could harbor and grow bacteria, including *Burkholderia pseudomallei*; and (iii) that bacteria, including *Burkholderia pseudomallei*, can reach the consumer from aerosolization, fluid leakage, and other means.

202. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Flora.

203. At the time the Subject BHG Aromatherapy Product left Flora's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous for Plaintiffs, including Wyatt G. Gibson, deceased. The Subject BHG Aromatherapy Product was defective in that its design and manufacture allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

204. Flora intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

205. Flora knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

206. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household product.

207. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the design defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

208. The Subject BHG Aromatherapy Product, as designed by Defendants, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

209. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject BHG Aromatherapy Product that is not defective.

210. The foreseeable risks of harm posed by the Subject BHG Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by Flora, and the omission of an alternative design renders the Subject BHG Aromatherapy Product not reasonably safe for its intended use.

211. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, that Flora provided all proper warnings, instructions, and labels regarding the product, and that the product would not cause Wyatt G. Gibson, deceased, to contract a bacterial infection.

212. If Plaintiffs and/or Wyatt G. Gibson, deceased, had been made aware of the significant risks of *Burkholderia pseudomallei* infection associated with the use of the Subject BHG Aromatherapy Product, Plaintiffs would not have purchased and used the product in their household.

213. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design, manufacture, and Flora's failure to warn, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

214. Flora's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

215. Plaintiffs lost their son due to injuries he sustained as a result of Flora's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

216. As further direct and proximate result of Flora's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

217. As a direct and proximate result of Flora's conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**D. <u>Count Four: Negligence against Flora</u>**

218. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

219. Flora owed a duty of reasonable care to Plaintiffs, Wyatt G. Gibson, deceased, and all reasonably foreseeable users of the Subject BHG Aromatherapy Product, when it designed, imported, tested, assembled, manufactured, and distributed the Subject BHG Aromatherapy Product.

220. This duty of reasonable care required Flora to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

221. Flora breached this duty of care by designing, testing, assembling, manufacturing, importing, and distributing the Subject BHG Aromatherapy Product in a manner that made the product defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject BHG Aromatherapy Product's propensity to permit the colonization and growth of bacteria and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

222. Flora further breached its duty of care by allowing the Subject BHG Aromatherapy Product, including the product used by Plaintiffs, to become contaminated with *Burkholderia pseudomallei* while still in Flora's possession, and then sold to the end-user without being properly disinfected.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

223. Flora knew or reasonably should have known that the Subject BHG Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

224. Flora knew or reasonably should have known that consumers of the Subject BHG Aromatherapy Product would not realize the danger of potential transmission of deadly bacteria.

225. Flora failed to adequately warn of the danger of potential deadly bacterial transmission and failed to adequately instruct on the safe use of the Subject BHG Aromatherapy Product.

226. A reasonable designer, manufacturer, and distributor under the same or similar circumstances would have warned of the danger and instructed retailers and consumers on the safe use of the Subject BHG Aromatherapy Product.

227. Flora owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn retailers and consumers, including Plaintiffs and Wyatt G. Gibson, deceased, about these defects.

228. Flora failed to properly and timely warn retailers and Plaintiffs and Wyatt G. Gibson, deceased, about these defects, thereby breaching its duty of care.

229. Flora owed a duty to Plaintiffs and Wyatt G. Gibson, deceased, and all foreseeable users to issue a timely recall of all BHG Aromatherapy Product in use

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

throughout the United States when Flora became aware that the Subject BHG Aromatherapy Product had become contaminated.

230. Flora breached its duty by failing to timely recall all BHG Aromatherapy Product units, despite its knowledge that the units had been exposed to deadly bacteria and were possibly contaminated.

231. A reasonable designer, manufacturer, importer, and distributor under the same or similar circumstances would have recalled the BHG Aromatherapy Product, given the potential life-threatening risks to consumers.

232. Flora owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to follow good manufacturing, assembling, and distributing processes to prevent the Subject BHG Aromatherapy Product from becoming contaminated with deadly bacteria.

233. Flora breached its duty by failing to follow good manufacturing, assembling, and distributing processes to prevent its products from becoming contaminated with deadly bacteria.

234. Flora had a duty to act as a prudent supplier of a consumer product meant for human exposure, including to properly test the Subject BHG Aromatherapy Product to ensure harmful bacteria was not present.

235. Flora had a duty to understand the product specifications and designs of the Subject BHG Aromatherapy Product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

236. Flora had a duty to exercise reasonable care in selecting a foreign manufacturer of the Subject BHG Aromatherapy Product, even in the event Flora chose itself to be the manufacturer.

237. Flora had a duty to inspect and test the foreign manufacturing facilities manufacturing the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

238. Flora had a duty to identify quality control mechanisms in the manufacturing process of the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

239. Flora had a duty to establish contracts governing the design and production, testing, inspection, and quality control of the Subject BHG Aromatherapy Product to ensure that the product would be safe for United States consumers.

240. Flora had a duty to inspect the Subject BHG Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

241. Flora breached each of its duties in the following ways:

a. Failing to fully understand its obligations as a manufacturer, distributor, and importer under the law.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

b. Failing to understand the product specifications and designs of the Subject BHG Aromatherapy Product.

c. Failing to adhere to Walmart's supplier requirements.

d. Failing to exercise reasonable care in selecting a foreign manufacturer of the subject product.

e. Failing to inspect and test the foreign manufacturing facilities manufacturing the Subject BHG Aromatherapy Product.

f. Failing to identify quality control mechanisms in the manufacturing process of the Subject BHG Aromatherapy Product to ensure that the product would not become contaminated with a deadly bacteria.

g. Failing to establish contracts governing the design and production, testing, inspection, importation, and quality control of the Subject BHG Aromatherapy Product to ensure that the product would not be unreasonably dangerous for United States consumers.

h. Failing to inspect the Subject BHG Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

242. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and Flora's negligence, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

243. Flora's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

244. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

245. Plaintiffs lost their son due to injuries he sustained as a result of Flora's conduct. By virtue of his preventable and untimely death, Plaintiffs have suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

246. As further direct and proximate result of Flora's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

247. As a direct and proximate result of Flora's conduct, Plaintiffs seek to recover all damages which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**E. Count Five: Strict Product Liability against Walmart – Design Defect**

248. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

249. At all relevant times, Walmart was a corporation engaged in the business of marketing, distributing, and selling consumer products, including the Subject BHG Aromatherapy Product.

250. As the distributor and retailer of the Subject BHG Aromatherapy Product that played a pivotal role in bringing the product to the United States consumer, Walmart is responsible for the design and manufacture of the subject product.

251. The Subject BHG Aromatherapy Product was defective at the time it was designed, manufactured, assembled, distributed, and sold. The Subject BHG Aromatherapy Product was defective in that its design allowed it to become

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

contaminated with the rare and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

252. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Walmart.

253. At the time the Subject BHG Aromatherapy Product left Walmart's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt G. Gibson, deceased. The Subject BHG Aromatherapy Product was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

254. Walmart intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

255. Walmart knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

256. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household product.

257. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the design defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

258. The Subject BHG Aromatherapy Product, as designed, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

259. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject BHG Aromatherapy Product that is not defective.

260. The foreseeable risks of harm posed by the Subject BHG Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

alternative design by Walmart, and the omission of an alternative design renders the Subject BHG Aromatherapy Product not reasonably safe for its intended use.

261. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt G. Gibson, deceased, to develop a deadly infection.

262. The Subject BHG Aromatherapy Product used by Plaintiffs as a household product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

263. The use of the Subject BHG Aromatherapy Product as a household product was a substantial factor and the cause in fact of Wyatt G. Gibson's injuries, specifically, his contraction of an infection, his development of melioidosis, his subsequent pain and suffering, and eventual death.

264. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

265. Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

266. Plaintiffs lost their son due to injuries he sustained as a result of the conduct of Walmart. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

267. As further direct and proximate result of Walmart's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

268. As a direct and proximate result of the conduct of Walmart, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

### F. Count Six: Strict Product Liability against Walmart – Manufacturing Defect

269. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

270. At all times relevant, Walmart was engaged in the marketing, distribution, and sale of the Subject BHG Aromatherapy Product.

271. As the distributor and retailer of the Subject BHG Aromatherapy Product that played a pivotal role in bringing the product to the United States consumer, Walmart is responsible for the design and manufacture of the subject product.

272. The Subject BHG Aromatherapy Product was defective in its manufacture in that the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or shipped.

273. Walmart did not intend for the Subject BHG Aromatherapy Product to be contaminated with deadly bacteria at the time of manufacture and/or assembly.

274. The Subject BHG Aromatherapy Product was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacteria not intended or found in other units of the same product.

275. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Walmart.

276. At the time the Subject BHG Aromatherapy Product left Walmart's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous for Plaintiffs, including Wyatt G. Gibson, deceased.

277. The Subject BHG Aromatherapy Product was defective in that its manufacture and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

278. Walmart intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

279. Walmart knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

280. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the BHG Aromatherapy Product would be used as a household product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

281. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the manufacturing and assembling defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

282. The Subject BHG Aromatherapy Product, as manufactured and assembled, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

283. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of manufacturing and assembling an alternative design of the Subject BHG Aromatherapy Product that is not defective.

284. The Subject BHG Aromatherapy Product was manufactured and assembled with bacteria, including *Burkholderia pseudomallei*, present in and/or on the product.

285. Walmart's failure to ensure proper sanitation, failure to ensure proper workmanship, failure to ensure adequate testing, and/or failure to ensure adequate

labeling for the Subject BHG Aromatherapy Product caused the product to be manufactured and assembled in a manner that made the product defective and unreasonably dangerous.

286. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the BHG Aromatherapy Product would not be unreasonably dangerous and defective, and that the device would not cause Wyatt G. Gibson, deceased, to develop a deadly bacterial infection.

287. The use of the Subject BHG Aromatherapy Product as a household product was a substantial factor and the cause in fact of Wyatt G. Gibson's injuries, specifically, his contraction of an infection, his development of melioidosis, his subsequent pain and suffering, and eventual death.

288. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design and manufacture, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

289. Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

290. Plaintiffs lost their son due to injuries he sustained as a result of Walmart's conduct. By virtue of his preventable and untimely death, Plaintiffs have suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that the decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

291. As further direct and proximate result of Walmart's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

292. As a direct and proximate result of Walmart's conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**G. Count Seven: Strict Products Liability against Walmart – Failure to Warn**

293. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

294. At all times relevant, Walmart was engaged in the promotion, marketing, distribution, and/or sale of the BHG Aromatherapy Product.

295. As the distributor and retailer of the Subject BHG Aromatherapy Product that played a pivotal role in bringing the product to the United States consumer, Walmart is responsible for the design, manufacture, and warnings of the subject product.

296. The Subject BHG Aromatherapy Product was defective at the time it was designed, manufactured, assembled, distributed, and sold.

297. The Subject BHG Aromatherapy Product was defective in that its design and manufacture allowed it to become contaminated with deadly bacteria.

298. The Subject BHG Aromatherapy Product was defective and unreasonably dangerous in that the warnings, instructions, labels, and materials failed to adequately warn distributors, retailers, and/or consumers about the product's serious risk of causing infection from aerosolization fluid leakage, and other means via the product.

299. Walmart failed to timely and adequately warn consumers of the Subject BHG Aromatherapy Product's serious risks, including: (i) that the Subject BHG Aromatherapy Product was contaminated with bacteria, specifically, *Burkholderia pseudomallei*, at the time the product was manufactured, assembled, or imported; (ii) that the Subject BHG Aromatherapy Product could harbor and grow bacteria,

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

including *Burkholderia pseudomallei*; and (iii) that bacteria, including *Burkholderia pseudomallei*, can reach the consumer through aerosolization, fluid leakage, and other means.

300. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Walmart.

301. At the time the Subject BHG Aromatherapy Product left Walmart's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous for Plaintiffs, including Wyatt G. Gibson, deceased.

302. The Subject BHG Aromatherapy Product was defective in that its design and manufacture allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

303. Walmart intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

304. Walmart knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

305. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household product.

306. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the design defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

307. The Subject BHG Aromatherapy Product, as designed by Defendants, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

308. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject BHG Aromatherapy Product that is not defective.

309. The foreseeable risks of harm posed by the Subject BHG Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

alternative design by Defendants, and the omission of an alternative design renders the Subject BHG Aromatherapy Product not reasonably safe for its intended use.

310. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, that Walmart provided all proper warnings, instructions, and labels regarding the product, and that the product would not cause Wyatt G. Gibson, deceased, to contract a bacterial infection.

311. If Plaintiffs and/or Wyatt G. Gibson, deceased, had been made aware of the significant risks of *Burkholderia pseudomallei* infection associated with the use of the Subject BHG Aromatherapy Product, Plaintiffs would not have purchased and used the product in their household.

312. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design, manufacture, and Walmart's failure to warn, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

313. Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

314. Plaintiffs lost their son due to injuries he sustained as a result of Walmart's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

315. As further direct and proximate result of Walmart's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

316. As a direct and proximate result of Walmart's conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**H. <u>Count Eight: Negligence against Walmart</u>**

317. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

318. Walmart owed a duty of reasonable care to Plaintiffs, Wyatt G. Gibson, deceased, and all reasonably foreseeable users of the Subject BHG Aromatherapy Product, when it marketed, imported, distributed, and sold the Subject BHG Aromatherapy Product.

319. This duty of reasonable care required Walmart to ensure that the Subject BHG Aromatherapy Product was safely designed, manufactured, imported, distributed, tested, and sold.

320. Walmart had a duty to ensure that its supplier was in full compliance with industry regulations and standards in the manner it designed, manufactured, imported, and distributed the Subject BHG Aromatherapy Product, and to ensure that the product and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

321. Prior to, on, and after the date that the Subject BHG Aromatherapy Product was sold to Plaintiffs, and at all relevant times, Walmart warranted, distributed, and sold the Subject BHG Aromatherapy Product for use by consumers, such as Plaintiffs.

322. Walmart breached its duties and was negligent and careless in its marketing, importing, distributing, and sale of the Subject BHG Aromatherapy Product, and failed to use due care to avoid exposing consumers, including Wyatt G.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

Gibson, deceased, and Plaintiffs, to dangerous bacteria when the product was used in a reasonably foreseeable manner.

323. Walmart was negligent and careless in and about its selection, supervision, and retention of suppliers of the Subject BHG Aromatherapy Product.

324. Walmart owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn consumers, including Plaintiffs and Wyatt G. Gibson, deceased, about these defects.

325. Walmart failed to use reasonable care to discover the defects and properly, adequately, and timely warn Plaintiffs and Wyatt G. Gibson, deceased, about these defects, thereby breaching its duty of care.

326. Walmart failed to adequately warn of the danger of potential bacterial transmission and failed to adequately instruct on the safe use of the Subject BHG Aromatherapy Product.

327. A reasonable distributor, importer, and retailer under the same or similar circumstances would have warned of the danger and instructed on the safe use of the Subject BHG Aromatherapy Product.

328. Walmart was negligent and careless in that its product lacked warnings and instructions regarding the propensity of the Subject BHG Aromatherapy Product to become contaminated with deadly bacteria, and thereby caused harm or injury to consumers, including Wyatt G. Gibson, deceased, and Plaintiffs.

329. Prior to, on, and after the date that the Subject BHG Aromatherapy Produce was purchased, and at all relevant times, Walmart performed inadequate inspection, testing, and evaluation of the product where such inspection and evaluation would have revealed the Subject BHG Aromatherapy Product's contamination and potential to cause harm or injury to consumers, including Wyatt G. Gibson, deceased.

330. Walmart further breached its duty of care by allowing the Subject BHG Aromatherapy Product, including the product used by Plaintiffs, to remain contaminated with *Burkholderia pseudomallei* while still in the possession and control of Walmart, and then sold to the end-user.

331. Walmart knew or reasonably should have known that the Subject BHG Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

332. Walmart knew or reasonably should have known that users of the Subject BHG Aromatherapy Product would not realize the danger of potential transmission of deadly bacteria to the consumer.

333. Walmart owed a duty to Plaintiffs and Wyatt G. Gibson, deceased, and all foreseeable users to issue a timely recall of all BHG Aromatherapy Product in use throughout the United States when it became aware that the BHG Aromatherapy Product was contaminated.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

334. Walmart breached its duty by failing to timely recall the Subject BHG Aromatherapy Product, despite its knowledge that the product had been exposed to deadly bacteria and was possibly contaminated.

335. A reasonable importer, distributor, and retailer under the same or similar circumstances would have recalled the BHG Aromatherapy Product, given the potential risks to consumers.

336. Walmart owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to ensure the manufacturers and importers of the Subject BHG Aromatherapy Product follow good manufacturing, assembling, and distributing processes so as to prevent the Subject BHG Aromatherapy Product from becoming contaminated with deadly bacteria.

337. Walmart breached its duty by failing to ensure the manufacturers and importers of the Subject BHG Aromatherapy Product follow good manufacturing, assembling, and distributing processes to prevent the Subject BHG Aromatherapy Product from becoming contaminated with deadly bacteria.

338. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Walmart had a duty to fully understand the product specifications and designs of the Subject BHG Aromatherapy Product.

339. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Walmart had a duty to exercise due care in selecting a reasonably careful manufacturer and importer of the subject product.

340. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Walmart had a duty to inspect the foreign manufacturing facilities that manufactured the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

341. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Walmart had a duty to identify quality control mechanisms in the manufacturing and importing process of the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

342. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Walmart had a duty to establish contracts and enforcement mechanisms in the contract that governed the design and production, testing, inspection, and quality control of the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

343. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Walmart had a duty to inspect the Subject BHG Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to consumers in the United States.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

344. Walmart breached each of its duties as a distributor and retailer of the Subject BHG Aromatherapy Product in the following ways:

a. Failing to understand the product specifications and designs of the Subject BHG Aromatherapy Product.

b. Failing to exercise due care in selecting a foreign manufacturer and importer of the subject product.

c. Failing to inspect and test the foreign manufacturing facilities that would be manufacturing the Subject BHG Aromatherapy Product.

d. Failing to identify quality control mechanisms in the manufacturing and importing process of the Subject BHG Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

e. Failing to establish contracts and enforcement mechanisms in the contracts that governed the design and production, testing, inspection, and quality control of the Subject BHG Aromatherapy Product to ensure that the product would not be unreasonably dangerous for United States consumers.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

f. Failing to inspect the Subject BHG Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

345. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and Walmart's negligence, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

346. Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

347. Plaintiffs lost their son due to injuries he sustained as a result of Walmart's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

348. As further direct and proximate result of Walmart's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

349. As a direct and proximate result of Walmart's conduct, Plaintiffs seek to recover all damages which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

## I. **Count Nine: Breach of Implied Warranty against Walmart**

350. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

351. At all relevant and material times, Walmart manufactured, distributed, advertised, promoted, and sold the Subject BHG Aromatherapy Product.

352. At all relevant times, Walmart intended its Subject BHG Aromatherapy Product be used in the manner that Plaintiffs in fact used them.

353. Walmart impliedly warranted its Subject BHG Aromatherapy Product to be of merchantable quality, safe and fit for the use for which the Walmart intended them and Plaintiff in fact used.

354. Walmart breached its implied warranties as follows:

a. Walmart failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer or distributor exercising reasonable care would have provided concerning that risk, in light of the likelihood that its Subject BHG Aromatherapy Product would cause harm.

b. Walmart manufactured and/or sold the Subject BHG Aromatherapy Product and said product did not conform to representations made by Walmart when it left Walmart's control.

c. Walmart manufactured and/or sold its Subject BHG Aromatherapy Product which was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the product or formulation exceeded the benefits associated with that design.

d. These defects existed at the time the product left Walmart's control.

e. Walmart manufactured and/or sold its Subject BHG Aromatherapy Product when it deviated in a material way from the design specifications, formulas or performance standards or form otherwise identical products manufactured to the same

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

design specifications, formulas, or performance standards, and these defects existed at the time the product left Walmart's control.

355. The Subject BHG Aromatherapy Product were unfit and unsafe for use by users as it posed an unreasonable and extreme risk of injury to persons using said products, and accordingly Walmart breached its expressed warranties and the implied warranties associated with the product.

356. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and Walmart's negligence, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

357. Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

358. Plaintiffs lost their son due to injuries he sustained as a result of Walmart's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

359. As further direct and proximate result of Walmart's, Plaintiffs have incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

360. As a direct and proximate result of Walmart's conduct, Plaintiffs seek to recover all damages which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

### J. Count Ten: Strict Product Liability against Meredith Corporation– Design Defect

361. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

362. At all relevant times, Meredith Corporation was a corporation engaged in the business of branding, marketing, distributing, and selling consumer products, including the Subject BHG Aromatherapy Product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

363. As the distributor and retailer of the Subject BHG Aromatherapy Product, Meredith Corporation is responsible for the design and manufacture of the subject product.

364. The Subject BHG Aromatherapy Product was defective at the time it was designed, manufactured, assembled, distributed, and sold. The Subject BHG Aromatherapy Product was defective in that its design allowed it to become contaminated with the rare and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

365. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Meredith Corporation.

366. At the time the Subject BHG Aromatherapy Product left Meredith Corporation's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt G. Gibson, deceased. The Subject BHG Aromatherapy Product was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

367. Meredith Corporation intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

368. Meredith Corporation knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

369. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household product.

370. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the design defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

371. The Subject BHG Aromatherapy Product, as designed, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

372. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject BHG Aromatherapy Product that is not defective.

373. The foreseeable risks of harm posed by the Subject BHG Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by Meredith Corporation, and the omission of an alternative design renders the Subject BHG Aromatherapy Product not reasonably safe for its intended use.

374. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt G. Gibson, deceased, to develop a deadly infection.

375. The Subject BHG Aromatherapy Product used by Plaintiffs as a household product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

376. The use of the Subject BHG Aromatherapy Product as a household product was a substantial factor and the cause in fact of Wyatt G. Gibson's injuries, specifically, his contraction of an infection, his development of melioidosis, his subsequent pain and suffering, and eventual death.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

377. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

378. Meredith Corporation's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

379. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

380. Plaintiffs lost their son due to injuries he sustained as a result of the conduct of Meredith Corporation. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

according to proof, in accordance with California Code of Civil Procedure section 377.61.

381. As further direct and proximate result of Meredith Corporation's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

382. As a direct and proximate result of the conduct of Meredith Corporation, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

**K. Count Eleven: Strict Product Liability against Meredith Corporation – Manufacturing Defect**

383. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

384. At all times relevant, Meredith Corporation was engaged in the branding, marketing, distribution, and sale of the Subject BHG Aromatherapy Product.

385. As the distributor and retailer of the Subject BHG Aromatherapy Product that played a pivotal role in bringing the product to the United States consumer, Meredith Corporation is responsible for the design and manufacture of the subject product.

386. The Subject BHG Aromatherapy Product was defective in its manufacture in that the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or shipped.

387. Meredith Corporation did not intend for the Subject BHG Aromatherapy Product to be contaminated with deadly bacteria at the time of manufacture and/or assembly.

388. The Subject BHG Aromatherapy Product was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacteria not intended or found in other units of the same product.

389. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Meredith Corporation.

390. At the time the Subject BHG Aromatherapy Product left Meredith Corporation's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous for Plaintiffs, including Wyatt G. Gibson, deceased.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

391. The Subject BHG Aromatherapy Product was defective in that its manufacture and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

392. Meredith Corporation intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

393. Meredith Corporation knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

394. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the BHG Aromatherapy Product would be used as a household product.

395. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the manufacturing and assembling defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

396. The Subject BHG Aromatherapy Product, as manufactured and assembled, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

397. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of manufacturing and assembling an alternative design of the Subject BHG Aromatherapy Product that is not defective.

398. The Subject BHG Aromatherapy Product was manufactured and assembled with bacteria, including *Burkholderia pseudomallei*, present in and/or on the product.

399. Meredith Corporation's failure to ensure proper sanitation, failure to ensure proper workmanship, failure to ensure adequate testing, and/or failure to ensure adequate labeling for the Subject BHG Aromatherapy Product caused the product to be manufactured and assembled in a manner that made the product defective and unreasonably dangerous.

400. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the BHG Aromatherapy Product would not be unreasonably dangerous and

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

defective, and that the device would not cause Wyatt G. Gibson, deceased, to develop a deadly bacterial infection.

401. The use of the Subject BHG Aromatherapy Product as a household product was a substantial factor and the cause in fact of Wyatt G. Gibson's injuries, specifically, his contraction of an infection, his development of melioidosis, his subsequent pain and suffering, and eventual death.

402. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design and manufacture, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

403. Meredith Corporation's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

404. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

405. Plaintiffs lost their son due to injuries he sustained as a result of Walmart's conduct. By virtue of his preventable and untimely death, Plaintiffs have suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that the decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

406. As further direct and proximate result of Meredith Corporation's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

407. As a direct and proximate result of Meredith Corporation's conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

### L. Count Twelve: Strict Products Liability against Meredith Corporation – Failure to Warn

408. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

409. At all times relevant, Meredith Corporation was engaged in the branding, promotion, marketing, distribution, and/or sale of the BHG Aromatherapy Product.

410. As the marketer, distributor, and retailer of the Subject BHG Aromatherapy Product that played a pivotal role in bringing the product to the United States consumer, Meredith Corporation is responsible for the design, manufacture, and warnings of the subject product.

411. The Subject BHG Aromatherapy Product was defective at the time it was designed, manufactured, assembled, distributed, and sold.

412. The Subject BHG Aromatherapy Product was defective in that its design and manufacture allowed it to become contaminated with deadly bacteria.

413. The Subject BHG Aromatherapy Product was defective and unreasonably dangerous in that the warnings, instructions, labels, and materials failed to adequately warn distributors, retailers, and/or consumers about the product's serious risk of causing infection from aerosolization, fluid leakage, and other means via the product.

414. Meredith Corporation failed to timely and adequately warn consumers of the Subject BHG Aromatherapy Product's serious risks, including: (i) that the Subject BHG Aromatherapy Product was contaminated with bacteria, specifically, *Burkholderia pseudomallei*, at the time the product was manufactured, assembled,

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

or imported; (ii) that the Subject BHG Aromatherapy Product could harbor and grow bacteria, including *Burkholderia pseudomallei*; and (iii) that bacteria, including *Burkholderia pseudomallei*, can reach the consumer through aerosolization, fluid leakage, and other means.

415. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Meredith Corporation.

416. At the time the Subject BHG Aromatherapy Product left Meredith Corporation's possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous for Plaintiffs, including Wyatt G. Gibson, deceased.

417. The Subject BHG Aromatherapy Product was defective in that its design and manufacture allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

418. Meredith Corporation intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

419. Meredith Corporation knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

420. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household product.

421. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the design defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

422. The Subject BHG Aromatherapy Product, as designed by Meredith Corporation, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

423. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject BHG Aromatherapy Product that is not defective.

424. The foreseeable risks of harm posed by the Subject BHG Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by Defendants, and the omission of an alternative design renders the Subject BHG Aromatherapy Product not reasonably safe for its intended use.

425. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, that Meredith Corporation provided all proper warnings, instructions, and labels regarding the product, and that the product would not cause Wyatt G. Gibson, deceased, to contract a bacterial infection.

426. If Plaintiffs and/or Wyatt G. Gibson, deceased, had been made aware of the significant risks of *Burkholderia pseudomallei* infection associated with the use of the Subject BHG Aromatherapy Product, Plaintiffs would not have purchased and used the product in their household.

427. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design, manufacture, and Walmart's failure to warn, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

428. Meredith Corporation's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

429. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

430. Plaintiffs lost their son due to injuries he sustained as a result of Meredith Corporation's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

431. As further direct and proximate result of Meredith Corporation's conduct, Plaintiffs incurred economic damages in an amount to be determined

according to proof in accordance with California Code of Civil Procedure section 377.61.

432. As a direct and proximate result of Walmart's conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

### M. <u>Count Thirteen: Negligence against Meredith Corporation</u>

433. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

434. Meredith Corporation owed a duty of reasonable care to Plaintiffs, Wyatt G. Gibson, deceased, and all reasonably foreseeable users of the Subject BHG Aromatherapy Product, when it branded, marketed, imported, distributed, and sold the Subject BHG Aromatherapy Product.

435. This duty of reasonable care required Meredith Corporation to ensure that the Subject BHG Aromatherapy Product was safely designed, manufactured, imported, distributed, tested, and sold.

436. Meredith Corporation had a duty to ensure that its supplier was in full compliance with industry regulations and standards in the manner it designed, manufactured, imported, and distributed the Subject BHG Aromatherapy Product, and to ensure that the product and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

437. Prior to, on, and after the date that the Subject BHG Aromatherapy Product was sold to Plaintiffs, and at all relevant times, Meredith Corporation warranted, distributed, and sold the Subject BHG Aromatherapy Product for use by consumers, such as Plaintiffs.

438. Meredith Corporation breached its duties, and was negligent and careless in its marketing, importing, distributing, and sale of the Subject BHG Aromatherapy Product, and failed to use due care to avoid exposing consumers, including Wyatt G. Gibson, deceased, and Plaintiffs, to dangerous bacteria when the product was used in a reasonably foreseeable manner.

439. Meredith Corporation was negligent and careless in and about its selection, supervision, and retention of suppliers of the Subject BHG Aromatherapy Product.

440. Meredith Corporation owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn consumers, including Plaintiffs and Wyatt G. Gibson, deceased, about these defects.

441. Meredith Corporation failed to use reasonable care to discover the defects and properly, adequately, and timely warn Plaintiffs and Wyatt G. Gibson, deceased, about these defects, thereby breaching its duty of care.

442. Meredith Corporation failed to adequately warn of the danger of potential bacterial transmission and failed to adequately instruct on the safe use of the Subject BHG Aromatherapy Product.

443. A reasonable distributor, importer, and retailer under the same or similar circumstances would have warned of the danger and instructed on the safe use of the Subject BHG Aromatherapy Product.

444. Meredith Corporation was negligent and careless in that its product lacked warnings and instructions regarding the propensity of the Subject BHG Aromatherapy Product to become contaminated with deadly bacteria, and thereby caused harm or injury to consumers, including Wyatt G. Gibson, deceased, and Plaintiffs.

445. Prior to, on, and after the date that the Subject BHG Aromatherapy Produce was purchased, and at all relevant times, Meredith Corporation performed inadequate inspection, testing, and evaluation of the product where such inspection and evaluation would have revealed the Subject BHG Aromatherapy Product's contamination and potential to cause harm or injury to consumers, including Wyatt G. Gibson, deceased.

446. Meredith Corporation further breached its duty of care by allowing the Subject BHG Aromatherapy Product, including the product used by Plaintiffs, to

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

remain contaminated with *Burkholderia pseudomallei* while still in the possession and control of Meredith Corporation, and then sold to the end-user.

447. Meredith Corporation knew or reasonably should have known that the Subject BHG Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

448. Meredith Corporation knew or reasonably should have known that users of the Subject BHG Aromatherapy Product would not realize the danger of potential transmission of deadly bacteria to the consumer.

449. Meredith Corporation owed a duty to Plaintiffs and Wyatt G. Gibson, deceased, and all foreseeable users to issue a timely recall of all BHG Aromatherapy Product in use throughout the United States when it became aware that the BHG Aromatherapy Product was contaminated.

450. Meredith Corporation breached its duty by failing to timely recall the Subject BHG Aromatherapy Product, despite its knowledge that the product had been exposed to deadly bacteria and was possibly contaminated.

451. A reasonable importer, distributor, and retailer under the same or similar circumstances would have recalled the BHG Aromatherapy Product, given the potential risks to consumers.

452. Meredith Corporation owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to ensure the manufacturers and importers of the Subject

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

BHG Aromatherapy Product follow good manufacturing, assembling, and distributing processes to prevent the Subject BHG Aromatherapy Product from becoming contaminated with deadly bacteria.

453. Meredith Corporation breached its duty by failing to ensure the manufacturers and importers of the Subject BHG Aromatherapy Product follow good manufacturing, assembling, and distributing processes to prevent the Subject BHG Aromatherapy Product from becoming contaminated with deadly bacteria.

454. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Meredith Corporation had a duty to fully understand the product specifications and designs of the Subject BHG Aromatherapy Product.

455. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Meredith Corporation had a duty to exercise due care in selecting a reasonably careful manufacturer and importer of the subject product.

456. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Meredith Corporation had a duty to inspect the foreign manufacturing facilities that manufactured the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

457. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Meredith Corporation had a duty to identify quality control mechanisms in

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

the manufacturing and importing process of the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

458. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Meredith Corporation had a duty to establish contracts and enforcement mechanisms in the contract that governed the design and production, testing, inspection, and quality control of the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

459. In its role as a distributor and retailer of the Subject BHG Aromatherapy Product, Meredith Corporation had a duty to inspect the Subject BHG Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to consumers in the United States.

460. Meredith Corporation breached each of its duties as a distributor and retailer of the Subject BHG Aromatherapy Product in the following ways:

a. Failing to understand the product specifications and designs of the Subject BHG Aromatherapy Product.

b. Failing to exercise due care in selecting a foreign manufacturer and importer of the subject product.

c. Failing to inspect and test the foreign manufacturing facilities that would be manufacturing the Subject BHG Aromatherapy Product.

d. Failing to identify quality control mechanisms in the manufacturing and importing process of the Subject BHG Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

e. Failing to establish contracts and enforcement mechanisms in the contracts that governed the design and production, testing, inspection, and quality control of the Subject BHG Aromatherapy Product to ensure that the product would not be unreasonably dangerous for United States consumers.

f. Failing to inspect the Subject BHG Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

461. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and Meredith Corporation's negligence, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

462. Meredith Corporation's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

463. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

464. Plaintiffs lost their son due to injuries he sustained as a result of Meredith Corporation's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

465. As further direct and proximate result of Meredith Corporation's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

466. As a direct and proximate result of Meredith Corporation's conduct, Plaintiffs seek to recover all damages which they are entitled and which will be

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

### N. Count Fourteen: Breach of Implied Warranty against Meredith Corporation

467. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

468. At all relevant and material times, Meredith Corporation manufactured, distributed, advertised, promoted, and sold the Subject BHG Aromatherapy Product.

469. At all relevant times, Meredith Corporation intended its Subject BHG Aromatherapy Product be used in the manner that Plaintiffs in fact used them.

470. Meredith Corporation impliedly warranted its Subject BHG Aromatherapy Product to be of merchantable quality, safe and fit for the use for which Meredith Corporation intended them and Plaintiff in fact used.

471. Meredith Corporation breached its implied warranties as follows:

a. Meredith Corporation failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer or distributor exercising reasonable care would have provided concerning that risk, in light of the likelihood that its Subject BHG Aromatherapy Product would cause harm.

b. Meredith Corporation manufactured and/or sold the Subject BHG Aromatherapy Product and said product did not conform to

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

representations made by Meredith Corporation when it left Walmart's control.

c. Meredith Corporation manufactured and/or sold its Subject BHG Aromatherapy Product which was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the product or formulation exceeded the benefits associated with that design.

d. These defects existed at the time the product left Meredith Corporation's control.

e. Meredith Corporation manufactured and/or sold its Subject BHG Aromatherapy Product when it deviated in a material way from the design specifications, formulas or performance standards or form otherwise identical products manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the product left Walmart's control.

472. The Subject BHG Aromatherapy Product were unfit and unsafe for use by users as it posed an unreasonable and extreme risk of injury to persons using said

products, and accordingly Meredith Corporation breached its expressed warranties and the implied warranties associated with the product.

473. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and Meredith Corporation's negligence, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

474. Meredith Corporation's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

475. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

476. Plaintiffs lost their son due to injuries he sustained as a result of Meredith Corporation's conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

477. As further direct and proximate result of Meredith Corporation's conduct, Plaintiffs have incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

478. As a direct and proximate result of Meredith Corporation's conduct, Plaintiffs seek to recover all damages which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**O. Count Fifteen: Strict Liability against Defendant Ramesh Flowers – Design Defect**

479. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

480. At all times relevant, Ramesh Flowers was engaged in the design, development, testing, manufacture, assembly, promotion, marketing, distribution, supply, and/or sale of the Subject BHG Aromatherapy Product.

481. The Subject BHG Aromatherapy Product was defective at the time it was designed, developed, tested, manufactured, assembled, promoted, marketed, distributed, supplied, and sold.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

482. The Subject BHG Aromatherapy Product was defective in that its design allowed it to become contaminated with the rare and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

483. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold.

484. At the time the Subject BHG Aromatherapy Product left Ramesh Flowers' possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt G. Gibson, deceased. The Subject BHG Aromatherapy Product was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

485. Ramesh Flowers intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

486. Ramesh Flowers knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

487. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household product.

488. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the design defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

489. The Subject BHG Aromatherapy Product, as designed by Ramesh Flowers, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

490. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject BHG Aromatherapy Product that is not defective.

491. The foreseeable risks of harm posed by the Subject BHG Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

alternative design by Ramesh Flowers, and the omission of an alternative design renders the Subject BHG Aromatherapy Product not reasonably safe for its intended use.

492. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt G. Gibson, deceased, to develop a deadly infection.

493. The Subject BHG Aromatherapy Product used by Plaintiffs as a household product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

494. The use of the Subject BHG Aromatherapy Product as a household product was a substantial factor and the cause in fact of Wyatt G. Gibson's injuries, specifically, his contraction of an infection, his development of melioidosis, his subsequent pain and suffering, and eventual death.

495. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

496. Ramesh Flowers' conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' decedent, Wyatt G.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

497. Plaintiffs lost their son due to injuries he sustained as a result of Ramesh Flowers' conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

498. As further direct and proximate result of Flora's conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

499. As a direct and proximate result of Flora's conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**P. <u>Count Sixteen: Strict Liability as to Defendant Ramesh Flowers – Manufacturing Defect</u>**

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

500. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

501. At all times relevant, Ramesh Flowers was engaged in the manufacture and assembly of the Subject BHG Aromatherapy Product.

502. The Subject BHG Aromatherapy Product was defective in its manufacture in that the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or shipped.

503. Ramesh Flowers did not intend for the Subject BHG Aromatherapy Product to be contaminated with deadly bacteria at the time of manufacture and/or assembly.

504. The Subject BHG Aromatherapy Product was defective in manufacture in that it differed from Ramesh Flowers' intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacteria not intended or found in other units of the same product.

505. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

506. At the time the Subject BHG Aromatherapy Product left Ramesh Flowers' possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous for Plaintiffs, including Wyatt G. Gibson, deceased.

507. The Subject BHG Aromatherapy Product was defective in that its manufacture and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

508. Ramesh Flowers intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

509. Ramesh Flowers knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

510. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the BHG Aromatherapy Product would be used as a household product.

511. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the manufacturing and assembling defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

512. The Subject BHG Aromatherapy Product, as manufactured and assembled by Ramesh Flowers, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

513. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of manufacturing and assembling an alternative design of the Subject BHG Aromatherapy Product that is not defective.

514. Ramesh Flowers manufactured and assembled the Subject BHG Aromatherapy Product with bacteria, including *Burkholderia pseudomallei*, present in and/or on the product. The contamination occurred on the production line, during manufacture, or elsewhere while in Ramesh Flowers' possession or control.

515. Ramesh Flowers' failure to ensure proper sanitation, failure to ensure proper workmanship, failure to ensure adequate testing, and/or failure to ensure adequate labeling for the Subject BHG Aromatherapy Product caused the product to be manufactured and assembled in a manner that made the product defective and unreasonably dangerous.

516. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt G. Gibson, deceased, to develop a deadly bacterial infection.

517. The use of the Subject BHG Aromatherapy Product as a household product was a substantial factor and the cause in fact of Wyatt G. Gibson's injuries, specifically, his contraction of an infection, his development of melioidosis, his subsequent pain and suffering, and eventual death.

518. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design and manufacture, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

519. Ramesh Flowers' conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

520. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

521. Plaintiffs lost their son due to injuries he sustained as a result of Ramesh Flowers' conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that the decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

522. As further direct and proximate result of Ramesh Flowers' conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

523. As a direct and proximate result of Ramesh Flowers' conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

### Q. Count Seventeen: Strict Liability as to Defendant Ramesh Flowers – Failure to Warn

524. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

525. At all times relevant, Ramesh Flowers was engaged in the design, development, testing, manufacture, assembly, promotion, marketing, distribution, and/or sale of the BHG Aromatherapy Product.

526. The Subject BHG Aromatherapy Product was defective at the time it was designed, manufactured, assembled, distributed, and sold.

527. The Subject BHG Aromatherapy Product was defective in that its design and manufacture allowed it to become contaminated with deadly bacteria.

528. The Subject BHG Aromatherapy Product was defective and unreasonably dangerous in that the warnings, instructions, labels, and materials failed to adequately warn distributors, retailers, and consumers about the product's serious risk of causing infection from aerosolization, fluid leakage, and other means via the product.

529. Ramesh Flowers failed to timely and adequately warn importers, distributors, retailers, and consumers of the Subject BHG Aromatherapy Product's serious risks, including: (i) that the Subject BHG Aromatherapy Product was contaminated with bacteria, specifically *Burkholderia pseudomallei*, at the time the product was manufactured, assembled, or imported; (ii) that the Subject BHG Aromatherapy Product could harbor and grow bacteria, including *Burkholderia pseudomallei*; and (iii) that bacteria, including *Burkholderia pseudomallei*, can reach the consumer from aerosolization, fluid leakage, and other means.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

530. The Subject BHG Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold.

531. At the time the Subject BHG Aromatherapy Product left Ramesh Flowers' possession, the Subject BHG Aromatherapy Product was defective, and its condition made it unreasonably dangerous for Plaintiffs, including Wyatt G. Gibson, deceased. The Subject BHG Aromatherapy Product was defective in that its design and manufacture allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

532. Ramesh Flowers intended for the Subject BHG Aromatherapy Product to be used as a household product, as it was by Plaintiffs.

533. Ramesh Flowers knew or should have known that the Subject BHG Aromatherapy Product would be used as a household product, as it was by Plaintiffs.

534. The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

535. At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the design defects associated with the Subject BHG Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject BHG Aromatherapy Product. Thus, the dangerous condition of the Subject BHG Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

536. The Subject BHG Aromatherapy Product, as designed by Defendants, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

537. The foreseeable risks of transmitting bacteria to consumers during household use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject BHG Aromatherapy Product that is not defective.

538. The foreseeable risks of harm posed by the Subject BHG Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by Ramesh Flowers, and the omission of an alternative design renders the Subject BHG Aromatherapy Product not reasonably safe for its intended use.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

539. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject BHG Aromatherapy Product would not be unreasonably dangerous and defective, that Ramesh Flowers provided all proper warnings, instructions, and labels regarding the product, and that the product would not cause Wyatt G. Gibson, deceased, to contract a bacterial infection.

540. If Plaintiffs and/or Wyatt G. Gibson, deceased, had been made aware of the significant risks of *Burkholderia pseudomallei* infection associated with the use of the Subject BHG Aromatherapy Product, Plaintiffs would not have purchased and used the product in their household.

541. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and its defective design, manufacture, and Ramesh Flowers' failure to warn, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

542. Ramesh Flowers' conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

543. Plaintiffs lost their son due to injuries he sustained as a result of Ramesh Flowers' conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

544. As further direct and proximate result of Ramesh Flowers' conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

545. As a direct and proximate result of Ramesh Flowers' conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**R. Count Eighteen: Negligence against Ramesh Flowers**

546. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

547. Ramesh Flowers owed a duty of reasonable care to Plaintiffs, Wyatt G. Gibson, deceased, and all reasonably foreseeable users of the Subject BHG

Aromatherapy Product, when it designed, imported, tested, assembled, manufactured, and distributed the Subject BHG Aromatherapy Product.

548. This duty of reasonable care required Ramesh Flowers to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

549. Ramesh Flowers breached this duty of care by designing, testing, assembling, manufacturing, importing, and distributing the Subject BHG Aromatherapy Product in a manner that made the product defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject BHG Aromatherapy Product's propensity to permit the colonization and growth of bacteria and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

550. Ramesh Flowers further breached its duty of care by allowing the Subject BHG Aromatherapy Product, including the product used by Plaintiffs, to become contaminated with *Burkholderia pseudomallei* while still in Ramesh Flowers' possession, and then sold to the end-user without being properly disinfected.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

551. Ramesh Flowers knew or reasonably should have known that the Subject BHG Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

552. Ramesh Flowers knew or reasonably should have known that consumers of the Subject BHG Aromatherapy Product would not realize the danger of potential transmission of deadly bacteria.

553. Ramesh Flowers failed to adequately warn of the danger of potential deadly bacterial transmission and failed to adequately instruct on the safe use of the Subject BHG Aromatherapy Product.

554. A reasonable designer, manufacturer, and distributor under the same or similar circumstances would have warned of the danger and instructed retailers and consumers on the safe use of the Subject BHG Aromatherapy Product.

555. Ramesh Flowers owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn importers, distributors, retailers, and consumers, including Plaintiffs and Wyatt G. Gibson, deceased, about these defects.

556. Ramesh Flowers failed to properly and timely warn importers, distributors, retailers and Plaintiffs and Wyatt G. Gibson, deceased, about these defects, thereby breaching its duty of care.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

557. Ramesh Flowers owed a duty to Plaintiffs and Wyatt G. Gibson, deceased, and all foreseeable users to issue a timely recall of all BHG Aromatherapy Product in use throughout the United States when Ramesh Flowers became aware that the Subject BHG Aromatherapy Product had become contaminated.

558. Ramesh Flowers breached its duty by failing to timely recall all BHG Aromatherapy Product units, despite its knowledge that the units had been exposed to deadly bacteria and were possibly contaminated.

559. A reasonable designer, manufacturer, importer, and distributor under the same or similar circumstances would have recalled the BHG Aromatherapy Product, given the potential life-threatening risks to consumers.

560. Ramesh Flowers owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to follow good manufacturing, assembling, and distributing processes to prevent the Subject BHG Aromatherapy Product from becoming contaminated with deadly bacteria.

561. Ramesh Flowers breached its duty by failing to follow good manufacturing, assembling, and distributing processes to prevent its products from becoming contaminated with deadly bacteria.

562. Ramesh Flowers had a duty to act as a prudent supplier of a consumer product meant for human exposure, including to properly test the Subject BHG Aromatherapy Product to ensure harmful bacteria was not present.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

563. Ramesh Flowers had a duty to understand the product specifications and designs of the Subject BHG Aromatherapy Product.

564. Ramesh Flowers had a duty to exercise reasonable care in the manufacturer of the Subject BHG Aromatherapy Product.

565. Ramesh Flowers had a duty to inspect, test, and manufacture the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

566. Ramesh Flowers had a duty to identify and implement quality control mechanisms in the manufacturing process of the Subject BHG Aromatherapy Product to ensure that the product was safe for United States consumers.

567. Ramesh Flowers had a duty to inspect the Subject BHG Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

568. Ramesh Flowers breached each of its duties in the following ways:

a. Failing to fully understand its obligations as a manufacturer, distributor, and importer under the law.

b. Failing to understand the product specifications and designs of the Subject BHG Aromatherapy Product.

c. Failing to exercise reasonable care in the manufacture of the Subject BHG Aromatherapy Product.

d. Failing to inspect and test the foreign manufacturing facilities manufacturing the Subject BHG Aromatherapy Product.

e. Failing to identify and implement quality control mechanisms in the manufacturing process of the Subject BHG Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

f. Failing to inspect and test the Subject BHG Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

569. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and Ramesh Flowers' negligence, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

570. Ramesh Flowers' conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time.

571. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

572. Plaintiffs lost their son due to injuries he sustained as a result of Ramesh Flowers' conduct. By virtue of his preventable and untimely death, Plaintiffs have suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

573. As further direct and proximate result of Ramesh Flowers' conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

574. As a direct and proximate result of Ramesh Flowers' conduct, Plaintiffs seek to recover all damages which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**S. <u>Count Nineteen: Breach of Implied Warranty against Defendant Ramesh Flowers</u>**

575. Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

576. At all relevant and material times, Ramesh Flowers manufactured, distributed, advertised, promoted, and sold the Subject BHG Aromatherapy Product.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

577. At all relevant times, Ramesh Flowers intended its Subject BHG Aromatherapy Product be used in the manner that Plaintiffs in fact used them.

578. Ramesh Flowers impliedly warranted its Subject BHG Aromatherapy Product to be of merchantable quality, safe and fit for the use for which Ramesh Flowers intended them and Plaintiff in fact used.

579. Ramesh Flowers breached its implied warranties as follows:

a. Ramesh Flowers failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer or distributor exercising reasonable care would have provided concerning that risk, in light of the likelihood that its Subject BHG Aromatherapy Product would cause harm.

b. Ramesh Flowers manufactured and/or sold the Subject BHG Aromatherapy Product and said product did not conform to representations made by  Ramesh Flowers when it left Ramesh Flowers's control.

c. Ramesh Flowers manufactured and/or sold its Subject BHG Aromatherapy Product which was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

associated with the product or formulation exceeded the benefits associated with that design.

d. These defects existed at the time the product left Ramesh Flowers' control.

e. Ramesh Flowers manufactured and/or sold its Subject BHG Aromatherapy Product when it deviated in a material way from the design specifications, formulas or performance standards or form otherwise identical products manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the product left Ramesh Flowers' control.

580. The Subject BHG Aromatherapy Product was unfit and unsafe for use by users as it posed an unreasonable and extreme risk of injury to persons using said products, and accordingly Ramesh Flowers breached its expressed warranties and the implied warranties associated with the product.

581. As a direct and proximate result of the use of the Subject BHG Aromatherapy Product as a household product and Ramesh Flowers' negligence, Wyatt G. Gibson, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

582. Ramesh Flowers' conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, Wyatt G. Gibson. After the initial injury, Decedent Wyatt G. Gibson survived for an appreciable period of time. Plaintiffs Wesley Gibson and Alexis Gibson, as surviving parents and successors-in-interest to Decedent Wyatt G. Gibson, seek all damages otherwise accruing to Decedent in a survival action brought pursuant to the California Code of Civil Procedure section 377.34 (including pain, suffering, and disfigurement under subdivision b).

583. Plaintiffs lost their son due to injuries he sustained as a result of Ramesh Flowers' conduct. By virtue of his preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

584. As further direct and proximate result of Ramesh Flowers' conduct, Plaintiffs have incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

585. As a direct and proximate result of Ramesh Flowers' conduct, Plaintiffs seek to recover all damages which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

## IV. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For the wrongful death claimants, the non-economic damages caused by the wrongful death of Wyatt G. Gibson, deceased, in an amount in excess of the minimum jurisdictional amount of this Court, according to proof, at trial, including but not limited to damages for Plaintiffs' loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support;

2. For the wrongful death claimants, the economic damages caused by the wrongful death of Wyatt G. Gibson, deceased, being the loss of the financial support that Decedent would have contributed to Plaintiffs, the loss of gifts or benefits that he would have given to his parents, funeral and burial expenses and the reasonable value of household services that Decedent would have provided, in an amount according to proof at trial;

3. Under California Code of Civil Procedure section 377.34, as amended by Senate Bill No. 447, for the successors in interests of Wyatt G. Gibson, deceased,

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

the non-economic damages for Wyatt G. Gibson's pain, suffering, and disfigurement.

4. For the successors to the interests of Wyatt G. Gibson, deceased, the economic damages, including past hospital, medical, and other health care and other expenses incurred prior to his death, according to proof at trial;

5. As to the survival action on behalf of Wyatt G. Gibson, deceased, punitive damages;

6. All damages recoverable under California law;

7. For costs of suit incurred herein; and,

8. Such other and further relief as the Court deems just and proper.

This 11th day of July, 2023

**TURNBULL, HOLCOMB & LEMOINE, PC**

*/s/ M. Alan Holcomb*
M. Alan Holcomb
California Bar No. 311171
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326
Telephone: 404-793-2566
Email: aholcomb@turnbullfirm.com
*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a jury trial on all issues, causes of action, and forms of relief in this Complaint.

This 11th day of July, 2023.

**TURNBULL, HOLCOMB & LEMOINE, PC**

*/s/ M. Alan Holcomb*
M. Alan Holcomb
California Bar No. 311171
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326
Telephone: 404-793-2566
Email: aholcomb@turnbullfirm.com
*Attorneys for Plaintiffs*

TURNBULL, HOLCOMB & LEMOINE, P.C.
945 East Paces Ferry Road, NE, Suite 2275
Atlanta, GA 30326

**CERTIFICATE OF SERVICE**

I, M. Alan Holcomb, certify and declare as follows:

1. I am over the age of 18 and not a party to this action.

2. My business address is 945 East Paces Ferry Road, NE, Suite 2275, Atlanta, GA 30326.

3. On July 11, 2023, I electronically filed the **THIRD AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES** with the Clerk of the Court for the United States District Court, Central District of California by using the Court's CM/ECF System.

4. Participants in this case who are registered CM/ECF users will be served by the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This 11th day of July, 2023.

*/s/ M. Alan Holcomb*
M. Alan Holcomb