# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY GIBSON; and ALEXIS GIBSON, individually and as surviving parents and as successor-in-interest to Decedent Wyatt G. Gibson,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART, INC.; FLORA CLASSIQUE, INC.; MEREDITH CORPORATION; RAMESH FLOWERS PRIVATE LIMITED; DOES 1 through 20; ROE Corporations 1 through 20;and DOE Employees 1 through 20,<br><br>Defendants. | Case No. 5:22-cv-00238-JWH-DTBx<br><br>**ORDER REGARDING DEFENDANTS' MOTIONS TO INTERVENE [ECF No. 172 in Case No. 24-00870] AND FOR GOOD-FAITH SETTLEMENT DETERMINATIONS [ECF Nos. 183 & 184 in Case No. 22-00238 and ECF Nos. 164, 167 & 168 in Case No. 24-00870]** |
| WESLEY CHASE GIBSON as Ancillary Personal Representative of the ESTATE OF WYATT GARY GIBSON, Deceased and ALL WRONGFUL DEATH BENEFICIARIES,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER TESTING LABORATORIES, INC.; UL VERIFICATION SERVICES, INC.; | Case No. 5:24-cv-00870-JWH-DTBx |

EARTHBOUND LICENSING, LLC;
EARTHBOUND, LLC;
EARTHBOUND PW LLC,
ROBERT BURGESS d/b/a BURGESS GROUP a/k/a/ BOB BURGESS AND ASSOCIATES;
MELISSA METCALFE;
MANE USA, INC.;
GALA NORTH AMERICA, INC.; and
JOHN DOES 1-10,

Defendants.

## I. SUMMARY OF DECISION

The above-captioned related actions arise out of the tragic death in July 2021 of five-year-old Wyatt Gibson, who was exposed to the *Burkholderia pseudomallei* bacterium through an aromatherapy product that was purchased from a Walmart store in Georgia. Following Wyatt's death, his parents—Plaintiffs Alexis Leah Freeman Gibson and Wesley Chase Gibson—commenced two lawsuits against a variety of entities.[1] Wyatt's mother, Alexis Gibson, died in April 2024. Following her death, the Court substituted Wyatt's father, Wesley Gibson, in her place.[2] In August 2024 Gibson reached settlements with all but two of those entities: Defendants Wal-Mart, Inc. and Meredith Corporation (jointly, "Walmart"). In November 2025 Gibson and Walmart reached a settlement that resolved Gibson's claims in their entirety.[3]

Presently before the Court are seven matters:

- the unopposed motion of Defendant Mane USA for a good-faith settlement determination;[4]
- the unopposed motion of Defendant Robert Burgess, d/b/a Burgess Group, a/k/a Bob Burgess and Associates ("Burgess") for a good-faith settlement determination;[5]
- the unopposed motion of Defendant Ramesh Flowers Private Limited for a good-faith settlement determination;[6]
- the unopposed motion of Defendant Flora Classique, Inc. for a good-faith settlement determination;[7]

---

1 *See Gibson v. Walmart Inc.*, Case No. 5:22-cv-00238 (the "California Action"); *Gibson v. Consumer Testing Laboratories, Inc.*, Case No. 5:24-cv-00870 (the "Arkansas Action").

2 *See* Order Granting Unopposed Motion for Substitution of Party [ECF No. 157 in the Arkansas Action].

3 *See* Notice of Settlement ("Walmart's Settlement Notice") [ECF No. 244].

4 *See* Mane's Mot. for Order for Good Faith Settlement Determination ("Mane's Motion") [ECF Nos. 164 (unsealed) & 165 (sealed) in Arkansas Action].

5 *See* Burgess's Appl. for Determination of Good Faith Settlement ("Burgess's Motion") [ECF No. 168 (sealed) & 169 (unsealed) in the Arkansas Action]; *see also* Notice of Non-Opp'n to Burgess's Motion (the "Burgess Notice of Non-Opposition") [ECF No. 188 in the Arkansas Action].

6 *See* Mot. for Good Faith Settlement Determination ("Ramesh Flowers's Motion") [ECF No. 183 (sealed) & 180-4 (unsealed) in the California Action]. Upon reaching a settlement with Gibson, Walmart withdrew its opposition to Ramesh Flower's Motion as moot.

7 *See* Mot. for Determination of Good Faith Settlement ("Flora Classique's Motion") [ECF No. 184 (unsealed) & 185 (sealed) in the California Action]. Upon reaching a settlement

- the unopposed motion of Defendant Gala North America, Inc. for a good-faith settlement determination;[8]
- Walmart's motion to intervene in the Arkansas Action,[9] which Gala opposes;[10] and
- the Court's Orders to Show Cause Regarding Consolidation.[11]

After considering the papers filed in support and in opposition of these matters—including Walmart's withdrawal of its oppositions to the motions for good-faith settlement determinations[12]—as well as the arguments of counsel during the hearing on the Motions, the Court **GRANTS** all five motions for a good-faith settlement

---

with Gibson, Walmart withdrew its opposition to Flora Classique's Motion as moot. *See* Walmart's Settlement Notice.

[8] *See* Mot. for Determination of Good Faith Settlement ("Gala's Motion") [ECF No. 167 (sealed) in the Arkansas Action]. Upon reaching a settlement with Gibson, Walmart withdrew its opposition to Gala's Motion as moot. *See* Walmart's Settlement Notice.

[9] *See* Def.'s Mot. to Intervene (the "Motion to Intervene") [ECF No. 172 in the Arkansas Action].

[10] *See* Gala's Opp'n to the Motion to Intervene (the "Motion to Intervene Opposition") [ECF No. 185 in the Arkansas Action].

[11] *See* Order to Show Cause re Consolidation (the "OSCs") [ECF No. 218 in the California Action & ECF No. 196 in the Arkansas Action].

[12] The Court considered the documents of record in these actions, including the following papers: (1) Mane's Motion; (2) Burgess's Motion; (3) Ramesh Flowers's Motion; (4) Walmart's Opp'n to the Ramesh Flowers Motion (the "Ramesh Flowers's Motion Opposition") [ECF No. 189 (unsealed) & 196-14 (sealed) in the California Action].; (5) Def.'s Reply in Supp. of Ramesh Flowers's Motion [ECF No. 206 (unsealed) in the California Action]; (6) Flora Classique's Motion; (7) Walmart's Opp'n to Flora Classique's Motion (the "Flora Classique's Motion Opposition") [ECF No. 190 (unsealed) & 196 (sealed) in the California Action]; (8) Def.'s Reply in Supp. of Flora Classique's Motion [ECF No. 207 (unsealed) & 212 (sealed) in the California Action]; (9) Pls.' Reply in Supp. of Ramesh Flowers's Motion and Flora Classique's Motion [ECF No. 204 in the California Action]; (10) Pls.' Suppl. Response in Supp. of Ramesh Flowers's Motion and Flora Classique's Motion [ECF No. 225 in the California Action]; (11) Walmart's Suppl. Response in Opp'n to Ramesh Flowers's Motion and Flora Classique's Motion [ECF No. 227 in the California Action]; (12) Defs.' Suppl. Response in Supp. of Ramesh Flowers's Motion and Flora Classique's Motion [ECF No. 228 in the California Action]; (13) Gala's Motion; (14) Walmart's Opp'n to Gala's Motion ("Gala's Motion Opposition") [ECF No. 173 (unsealed) & 181 (unsealed) in the Arkansas Action]; (15) Def.'s Reply in Supp. of Gala's Motion [ECF No. 189 (unsealed) & 190 (sealed) in the Arkansas Action]; (16) Motion to Intervene; (17) Motion to Intervene Opposition; (18) Walmart's Reply in Supp. of the Motion to Intervene [ECF No. 187 in the Arkansas Action]; (19) Flora Classique's and Ramesh Flowers' Response to the OSC [ECF No. 224 in the California Action]; (20) Walmart's Response to the OSC [ECF No. 226 in the California Action]; (21) Burgess's Suppl. Brief in Supp. of Burgess's Motion [ECF No. 204 in the Arkansas Action]; (22) Burgess's Response to the OSC [ECF No. 205 in the Arkansas Action]; (23) Pls.' Response to the OSC [ECF No. 206 in the Arkansas Action]; (24) Gala's Suppl. Br. in Support of Gala's Motion [ECF No. 207 in the Arkansas Action]; and (25) Walmart's Settlement Notice.

determination, **DENIES as moot** Walmart's Motion to Intervene, and **DISCHARGES** the OSCs, for the reasons set forth below.

## II. BACKGROUND

### A. Facts

Five-year-old Wyatt G. Gibson died after he was exposed to the *Burkholderia pseudomallei* bacterium, or meliodosis, after his family purchased and used in his household a BHG Aromatherapy Product (the "Product") that was sold at a Walmart store in Georgia.[13] Although many of the underlying facts remain in dispute, the parties generally agree upon the following factual summary:

Long before the Product was designed or manufactured, Flora Classique, which is a company headquartered in California, decided that it wanted to distribute aromatherapy products through Walmart.[14] Burgess, which is a consulting firm that assists companies that would like to distribute products through Walmart, introduced Flora Classique to Walmart and advised Flora Classique regarding Walmart's design specifications.[15]

After Burgess put the parties in contact, Walmart agreed to sell Flora Classique's proposed aromatherapy products under Walmart's "Better Homes and Gardens" trademark.[16] The parties further agreed that Walmart would develop the aesthetic details for the aromatherapy sprays,[17] while Flora Classique would manufacture the sprays in compliance with the law and with Walmart's specifications.[18] In order to manufacture the sprays, Flora Classique selected its parent company, Ramesh Flowers, to produce the aromatherapy sprays at a factory located in Tuticorin, India.[19] Walmart classified Ramesh

---

13 *See generally* Third Am. Compl. (the "California Amended Complaint") [ECF No. 86 in the California Action].

14 *See generally* Flora Classique's Motion Opposition.

15 *See* Decl. of Vicki Greco (the "Greco Declaration") [ECF No. 168 in the Arkansas Action] ¶ 3.

16 *See* Flora Classique's Motion Opposition 7:1-4.

17 *See id.* at 7:4-6.

18 *See id.* at 7:17-21; *see also* Flora Classique's Motion 2:16-22.

19 *See* Flora Classique's Motion Opposition 7:21-22 & 8:1-3; *see also* Flora Classique's Motion 2:8-14.

Flower's factory as "medium risk" because the area suffered from yearly monsoons that sometimes caused contamination of the area's soil and water.[20]

To obtain the fragrances for the aromatherapy sprays, Flora Classique contracted with two different Walmart-approved suppliers. The first supplier, non-party Arylessence, developed five fragrances, while the second supplier, Mane, developed the lavender and chamomile fragrance.[21] Arylessence's fragrances contained a common biocide called Kathon, which was used as a disinfectant.[22] But Flora Classique and Ramesh Flowers instructed Mane ***not*** to include Kathon in the lavender and chamomile fragrance.[23] Instead, Flora Classique and Ramesh Flowers informed Mane that Ramesh Flowers would add Kathon to the aromatherapy spray during the manufacturing process.[24]

In November and December 2020 the Tuticorin area experienced heavy rain and flooding, which increased the risk that *Burkholderia pseudomallei* bacteria would be introduced into the aromatherapy sprays.[25] That risk, in turn, increased the importance of ensuring that the aromatherapy sprays contained sufficient Kathon to disinfect the products.[26] Nevertheless, Ramesh Flowers added the same amount of Kathon to all of the aromatherapy sprays, despite the fact that the lavender and chamomile spray required more Kathon than the others.[27] As a result, the lavender and chamomile aromatherapy sprays did not contain enough Kathon to disinfect the products properly.[28]

Flora Classique supplied the complete, and inadequately disinfected, aromatherapy sprays to Walmart, which sold the sprays in Walmart stores located throughout the United States.[29] In 2021 the Gibsons purchased the chamomile and lavender aromatherapy spray from a Walmart store in Calhoun, Georgia.[30] According to the label on the product, customers were directed to raise any complaints or concerns

---

20 *See* Am. Compl. (the "Arkansas Amended Complaint") [ECF No. 56 in the Arkansas Action] ¶¶ 49-51.

21 *See* Flora Classique's Motion 2:16-20; *see also* Flora Classique's Motion Opposition 8:4-6.

22 *See* Flora Classique's Motion Opposition 8:8-13.

23 *See id.*

24 *See id.*; *see also* Mane's Motion 4:25-5:1.

25 *See* Arkansas Amended Complaint ¶¶ 52-54.

26 *See id.* at ¶ 54.

27 *See* Flora Classique's Motion 10:11-17.

28 *See id.*

29 *See generally* Arkansas Amended Complaint.

30 *See id.* at ¶ 35.

with the Gala Group, which is the parent company of Flora Classique, Ramesh Flowers, and Gala.[31]

Beginning in March 2021, individuals in Kansas, Texas, Minnesota, and Georgia became infected with *Burkholderia pseudomallei*.[32] One of those individuals was the Gibsons' five-year-old son, Wyatt, who passed away in July 2021.[33] Following Wyatt's death, the CDC tested the lavender and chamomile spray that had been used in his home and determined that it contained *Burkholderia pseudomallei*.[34] The five other aromatherapy sprays, each of which contained more Kathon than the lavender and chamomile sprays, were not contaminated with *Burkholderia pseudomallei*, but Walmart recalled all of the room sprays and stopped accepting products from Flora Classique, Gala, or Ramesh Flowers.[35]

## B. Procedural History

In January 2022 the Gibsons commenced the California Action in Riverside County Superior Court.[36] At that time, the Gibsons asserted four claims for relief against Walmart and Flora Classique: (1) strict products liability—design defect; (2) strict products liability—manufacturing defect; (3) strict products liability—failure to warn; and (4) negligence—products liability.[37]

Flora Classique removed the California Action to this Court in February 2022,[38] and the next month the Gibsons filed their First Amended Complaint.[39] In October 2022 the Gibsons filed a Second Amended Complaint, which added a claim for breach of the implied warranty.[40] Then, in July 2023 the Gibsons filed the operative Third Amended Complaint, through which the Gibsons joined Ramesh Flowers as a party defendant.[41]

---

31 *See id.* at ¶ 72.

32 *See id.* at ¶¶ 63-68.

33 *See id.* at ¶ 67.

34 *See id.* at ¶¶ 70 & 71.

35 *See id.* at ¶ 76; *see also* Flora Classique's Motion 3:14-23; Ramesh Flowers's Motion 4:9-13.

36 *See generally* Compl. [ECF No. 1-2 in the California Action].

37 *See generally id.*

38 *See* Notice of Removal [ECF No. 1 in the California Action].

39 *See* First Am. Compl. [ECF No. 24 in the California Action].

40 *See* Second Am. Compl. [ECF No. 42 in the California Action].

41 *See* California Amended Complaint.

In October 2023 Ramesh Flowers moved to dismiss the California Amended Complaint for lack of personal jurisdiction.[42] Two months later, the Court issued an Order to Show Cause regarding the potential consolidation of the California Action with another case involving a different individual who died after she was exposed to *Burkholderia pseudomallei* through a lavender and chamomile aromatherapy spray.[43] In September 2024, however, the Court received notice that the other case had settled; accordingly, the actions were never consolidated.[44]

Meanwhile, in September 2023 the Gibsons commenced the Arkansas Action in Benton County Circuit Court against Defendants Consumer Testing Laboratories, Inc.; UL Verification Services, Inc.; Earthbound Licensing, LLC; Earthbound, LLC; Earthbound PW LLC; Burgess; Melissa Metcalfe; Mane; and Gala.[45] Gala removed the action to the United States District Court for the Western District of Arkansas,[46] and the Gibsons moved to remand the action to Arkansas state court,[47] while Gala and Mane moved to dismiss the claims asserted against them.[48] In response, the Gibsons filed their First Amended Complaint,[49] and Mane and Gala moved to dismiss or transfer the action to this Court.[50] In April 2024 the Arkansas district court transferred the Gibsons' claims against Burgess, Mane, and Gala to this Court.[51] The Gibsons' claims against the other Defendants remained in Arkansas.[52]

In November 2024 Burgess, Mane, Flora Classique, Ramesh Flowers, and Gala filed their instant Motions, through which those parties informed the Court that they had reached a settlement.[53] The settlement amount is confidential, and the Settlement

---

42 *See* Def.'s Mot. to Dismiss for Lack of Jurisdiction [ECF No. 105 in the California Action].

43 *See* Order to Show Cause re Consolidation [ECF No. 122 in the California Action].

44 *See* Order [ECF No. 175 in the California Action].

45 *See* Compl. [ECF No. 1-1 in the Arkansas Action].

46 *See* Notice of Removal [ECF No. 1 in the Arkansas Action].

47 *See* Def.'s Mot. to Remand [ECF No. 8 in the Arkansas Action].

48 *See* Defs.' Mots. to Dismiss [ECF Nos. 42 & 52 in the Arkansas Action].

49 *See generally* Arkansas Amended Complaint.

50 *See* Defs.' Mots. to Dismiss for Lack of Jurisdiction [ECF Nos. 62 & 65 in the Arkansas Action].

51 *See* Opinion and Order (the "<u>Transfer Order</u>") [ECF No. 109 in the Arkansas Action].

52 *See id.*

53 *See* Mane's Motion; Burgess's Motion; Flora Classique's Motion; Ramesh Flowers's Motion; Gala's Motion.

Agreement is contingent upon this Court's finding of good faith pursuant to Cal. Civ. Proc. Code § 877.6.[54]

In response to those Motions, Walmart moved to intervene in the Arkansas Action, then Walmart filed Oppositions to Flora Classique's, Ramesh Flowers's, and Gala's Motions, based upon the potential that Walmart's right to contribution from those Defendants would be extinguished if the Court granted those Motions.[55] Because Walmart does not anticipate seeking contribution from Mane or Burgess, it did not file oppositions to Mane's Motion or Burgess's Motion.

The Court conducted a hearing on all of the Motions in January 2025, during which the Court also raised the possibility of consolidating the California Action and the Arkansas Action.[56] Then, in November 2025 Walmart notified the Court that it had reached a settlement that resolved Gibson's claims in their entirety.[57] As a result, Walmart withdrew its Oppositions to Flora Classique's, Ramesh Flowers's, and Gala's Motions. All of the matters before the Court are fully briefed.

## III. LEGAL STANDARD

Under California law, "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors." Cal. Civ. Proc. Code § 877.6(a)(1). If a court determines that the settlement was made in good faith, then that determination "shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." *Id.* § 877.6(c).

When deciding whether a settlement was made in good faith, a court must consider the following six factors, which were set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499-500 (1985):

---

[54] *See* Greco Declaration, Ex. A (the "Settlement Agreement") [ECF No. 168-1 in the Arkansas Action].

[55] *See* Flora Classique's Motion Opposition; Gala's Motion Opposition; Ramesh Flowers's Motion Opposition.

[56] *See* Min. Order re Hr'g re the Motions [ECF No. 217 in the California Action & ECF No. 195 in the Arkansas Action]; *see also* OSCs.

[57] *See* Walmart's Settlement Notice.

> (1) an approximation of plaintiff's total recovery and the settler's proportionate liability; (2) the amount paid in settlement; (3) a recognition that a settler should pay less in settlement than he would if he were found liable after trial; (4) the allocation of settlement proceeds; (5) the financial conditions and insurance policy limits of settling defendants; and (6) evidence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants.

*Cooper Drum Cooperating Parties Grp. v. Jervis B. Webb Co.*, 2021 WL 8441202, at *4 (C.D. Cal. Feb. 19, 2021) (quotations omitted and alterations adopted).

## IV. ANALYSIS

### A. Mane's Motion

All of the parties appear to agree that Mane played a limited role in the events that led to Wyatt Gibson's death. Although Mane developed the lavender and chamomile fragrance that was included in the Product, Mane contends that it is scientifically impossible for the bacteria to have grown in that fragrance, and no party has cast doubt on that contention.[58]

Mane's portion of the settlement is correspondingly limited. Pursuant to the Settlement Agreement, Mane will pay the smallest portion of the total settlement amount, and that amount will be distributed entirely to Gibson and his counsel.[59] Although Mane asserts that the amount is likely more than the damages that Mane would be required to pay if Mane proceeded to trial in this action, Mane would likely incur more than the settlement amount in attorneys' fees and costs if Mane continued to litigate this action.[60]

In view of Mane's negligible involvement in the contamination of the Product, the Settlement Agreement reflects a reasonable and fair resolution of Gibson's claims against Mane. Furthermore, there is no evidence of collusion or any other impropriety, and no party has indicated that it would seek contribution or indemnity from Mane at any point in the future.[61] Thus, the Court is satisfied that Mane is entitled to a good-faith

---

[58] *See generally* Mane's Motion.

[59] *See* Settlement Agreement.

[60] *See* Tr. (the "Transcript") [ECF No. 202 in the Arkansas Action] 68:8-71:12.

[61] *See id.* at 30:23-31:2.

settlement determination and that making such a determination will not prejudice any party. Accordingly, the Court **GRANTS** Mane's Motion.

## B. Burgess's Motion

The Court is satisfied that Burgess's portion of the settlement similarly corresponds to its proportionate liability.

The Settlement Agreement also provides that Burgess's portion of the settlement amount will be distributed entirely to Gibson and his counsel.[62] That amount represents the full limit of Burgess's insurance policy, and, in exchange for that payment, Gibson will release all of his claims against Burgess.[63] Burgess contends that those settlement terms are reasonable and appropriate in view of its role in this action, and the Court agrees. Although California law provides that any party that is involved in the production of a defective product may be held liable for the defect, a good-faith settlement determination is appropriate when a settlement represents the defendant's proportionate share of liability. *See Tech-Bilt*, 38 Cal. 3d at 498. A good-faith settlement determination is also appropriate when a settlement would provide the plaintiff with the full amount of a defendant's insurance policy and when there is no evidence that the settlement is the product of fraud or collusion. *See id.* at 499. Here, Burgess's relatively small settlement amount reflects its limited participation in the development of the Product; there is no evidence of any impropriety; and granting Burgess's Motion will not prejudice any other party.[64]

In short, the settlement is "within the bounds of fairness," and it warrants a good-faith determination. *Id.* at 500 (quotation omitted). Accordingly, the Court **GRANTS** Burgess's Motion.

## C. Flora Classique's Motion & Ramesh Flowers's Motion

In view of the fact that the parties no longer dispute that the settlement, as it relates to Flora Classique or Ramesh Flowers, was made in good faith, the Court concludes that the settlement satisfies the *Tech-Bilt* factors. The Court notes that there exists a presumption that the settlement was made in good faith, and that Cal. Civ. Proc. Code § 877.6(d) specifically assigns the burden of proof to a party challenging good faith. Here, no party challenges that the settlement was made in good faith.

---

62 *See* Settlement Agreement.

63 *See generally* Burgess's Motion.

64 *See* Transcript 30:23-31:3.

The Court is satisfied that the settlement accurately reflects Flora Classique and Ramesh Flower's proportional liability of a rough approximation of Gibson's total recovery. Furthermore, the settlement payments to which both Flora Classique and Ramesh Flowers agreed are to be distributed exclusively to Gibson and his counsel. The Court finds nothing under the remaining *Tech-Bilt* factors that gives it pause regarding the settlement as it relates to Flora Classique or Ramesh Flowers. Accordingly, the Court **GRANTS** Flora Classique's Motion and Ramesh Flowers's Motion.

**D. Gala's Motion & Walmart's Motion to Intervene**

Before turning to Gala's Motion, the Court must address Walmart's Motion to Intervene. Walmart's sole stated reason for seeking to intervene was to challenge Gala's Motion. Because Walmart has now withdrawn its opposition to Gala's Motion as moot, the Court concludes that Walmart's Motion to Intervene is also moot. Accordingly, the Court **DENIES as moot** Walmart's Motion to Intervene.

As with Flora Classique's Motion and Ramesh Flowers's Motion, Gala's Motion is unopposed. And, as with the other motions for a good-faith settlement determination discussed above, the Court concludes that Gala's Motion was made in good faith and that it satisfies the *Tech-Bilt* factors. Accordingly, the Court **GRANTS** Gala's Motion.

## V. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Mane's Motion [ECF Nos. 164 (unsealed) & 165 (sealed) in the Arkansas Action] is **GRANTED**.

2. Burgess's Motion [ECF Nos. 168 (sealed) & 169 (unsealed) in the Arkansas Action] is **GRANTED**.

3. Ramesh Flowers's Motion [ECF No. 183 (sealed) in the California Action] is **GRANTED**.

4. Flora Classique's Motion [ECF Nos. 184 (unsealed) & 185 (sealed) in the California Action] is **GRANTED**.

5. Walmart's Motion to Intervene [ECF No. 172 in the Arkansas Action] is **DENIED as moot**.

6. Gala's Motion [ECF No. 167 (sealed) in the Arkansas Action] is **GRANTED**.

7. The Court's Orders to Show Cause why the two cases should not be consolidated are **DISCHARGED**.

8. The parties are **DIRECTED** to confer forthwith regarding the procedural posture of these cases and to file no later than March 20, 2026, a Joint Status Report that advises the Court regarding the parties' collective or respective view regarding further proceedings in these actions.

9. A Status Conference is **SET** for April 3, 2026, at 11:00 a.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California. Counsel for the parties are **DIRECTED** to appear in person at that date and time.

**IT IS SO ORDERED.**

Dated: March 2, 2026

John W. Holcomb
UNITED STATES DISTRICT JUDGE